WILLIAM C. S. VENTRESS ET AL., EXECUTORS OF LOVIC VEN-
TRESS, DECEASED, PLAINTIFFS IN ERROR, v. NEAL SMITH, AD-
MINISTRATOR OF JOHN CLARK, DECEASED.

The power to sue for debts due to the estate of an intestate is implied in the authority given to administrators ad collegendum, issued under the authority of the statute law of Mississippi.

Construction of the statute of Mississippi providing for the substitution of executors or administrators, when either party to a suit dies before judgment.

It is incumbent on a plaintiff in error to make out an alleged error, clearly, and satisfactorily. Every reasonable intendment should be in favor of a judgment of a court.

The administrator, in Alabama, had sold slaves belonging to the estate of the intestate, without an order of court, authorizing the sale; and by private sale. By the Court: The statute of Alabama, (Laws Ala. p. 334,) declares that it shall not be lawful for any executor or administrator to dispose of the estate of any testator or intestate at private sale, except where the same is directed by the will of the testator; but that, in all cases where it may be necessary to sell the whole, or any part of the personal estate, application must be made to the orphans' court for an order of sale, which sale is required to be at public auction, after giving notice thereof as pointed out by the statute. The sale of these negroes, although bona fide and for a valuable consideration, was not made according to the provisions of this law. It was a private sale, and made without any order from the court. The order of sale expressly excepts the negroes. The sale was then not only without authority, but in express violation of the provisions of the statute. Such a sale cannot be supported upon any principles of law.

Executors and administrators, in making sales of property, must comply strictly with the requisites of all statutory provisions, on the subject; and unless every essential direction of the law is complied with, all whose interests are affected by the authority to sell are not concluded by the sale, unless, from a long acquiescence, a foundation is laid for a fair and reasonable presumption, that the requisites of the law had been complied with. No such presumption can arise in this case. It is a general rule of law, that a sale by a person who has no right to sell, is not valid against the rightful owner.

Authority given to executors and administrators to sell, is a personal trust, and must be strictly pursued; and if they transcend their authority, in any essential particular, their act is void.

It has sometimes been contended, that a bona fide purchase for a valuable consideration, and without notice, was equivalent to a purchase in market overt, under the English law, and bound the property against the party who had right. But we are not aware that this Saxon institution of markets overt, which controls and interferes with the application of the common law, has ever been recognised in any of the United States, or received any judicial sanction. At all events, no local usage or custom has been shown, applicable to the present case, to take it out of the general principle of the law of sales.

IN error to the district court of the United States for the district of Mississippi.

John Clark, of the state of Alabama, died in 1818, owning and posssessed of certain slaves; and after his decease, administration of his estate was granted to his widow. She afterwards intermarried with John Farrington, and an inventory of the estate was filed, the slaves being included in the same. On the first day of November, 1819, Neal Smith, and his co-security for the administratrix, by an application to the proper court, had the letters of administration revoked, on the ground that the administratrix and her husband were embezzling the estate of John Clark; and they stated that the negroes had been sold. Administration was granted to Neal Smith. The slaves were carried from the state of Alabama to the state of Mississippi, and were there sold. The county court of Clark county, in the state of Alabama, in August, 1819, authorized the administratrix of John Clark to sell all the personal property of the intestate, except the slaves; and it did not appear that any order to sell the slaves had ever been obtained. Neal Smith, sometime after he had been appointed administrator of the estate of John Clark, in Alabama, procured letters of administration, *ad colligendum*, from the probate court of Wilkinson county, in the state of Mississippi. They were in the following terms:

" State of Mississippi, Wilkinson county. To all to whom these presents shall come, greeting: Know ye, that whereas John Clark, of Clark county, in the state of Alabama, as it is said, had, at his decease, personal property within this state, the administration whereof cannot immediately, be granted, but which, if speedy care be not taken, maybe lost, destroyed, or diminished; to the end, therefore, that the same may be preserved for those who shall appear to have a legal right or interest therein, we do hereby request and anthorize Neal Smith to secure and collect the said property, wheresoever the same may be, in this state or in Wilkinson county, whether it be goods, chattels, debts, or credits, and to make, or cause to be made, a true and perfect inventory thereof, and to exhibit the same, with all convenient speed, together with a reasonable ac-

[Ventress et al. v. Smith.]

count of his collection, in the office of the register of the orphans court of the county of Wilkinson. Witness, the honorable Thomas H. Prosser, judge of probates of Wilkinson county.

[No seal of office.]        C. C. WEST, *Reg. W. C. P.*"

Neal Smith, under the authority of the letters of administration ad colligendum, on the 5th day of April, 1822, instituted, in the district court of the United States for Mississippi, an action of trover against Lovic Ventress, for the recovery of the slaves which had belonged to his intestate ; and with the declaration in trover, a copy of the letters of administration ad colligendum was filed. The defendant appeared and pleaded to the suit, and it was continued to April term 1823, when the death of the defendant was suggested, the case continued, and a scire facias was issued to Elizabeth Ventress, his administratrix. The administratrix appeared, by her attorney, at the succeeding October term, and the cause was " legally continued" until April term, 1825 ; when the death of the administratrix was suggested, and the cause again continued. On the 21st day of February, 1827, a scire facias was issued to William C. S. Ventress and others, the plaintiffs in error, executors of the last will and testament of Lovic Ventress, and at January term of the district court, they appeared, and the case was tried by a jury ; and a verdict was rendered in favor of the plaintiff, on which judgment was entered by the district court.

On the trial, the defendant offered no evidence other than a bill of sale for the slaves, made by James McDonald to Lovic Ventress, in consideration of $1,900 ; with proof that the same was paid at the time of sale, and that it was deemed a fair value for the slaves.

The plaintiffs offered in evidence the deposition of Neil Mc-Nair, and the defendant objected to the admission of a part of the same.

The court overruled the objection, and the following bill of exceptions was sealed :

" On the trial of this cause, the plaintiff offered in evidence the deposition of Neil McNair, the answer of which witness to the 10th cross interrogatory—(10th cross interrogatory : Were they not sent away, or intrusted to some person to be removed

and sold, by the administrator or administratrix, or other person · · al reprepresentative of said John Clark, in the state of Alabama ? Answer.. Deponent saith that he hath reason to believe, and doth believe, that the said negroes were removed and sold, not by the authority or request of the administratrix or any other person representing said estate )—the defendants, by their counsel, objected to as evidence to the jury, on the ground of being inadmissible from the manner of its answer, and moved the court to rule it out as inadmissible testimony.    But the court overruled the application of the defendant's counsel, and permitted the said answer to be read to the jury as evidence in the cause."

Upon the submission of the cause to the jury, the plaintiff's counsel requested the court to charge the jury—

1. That it must appear in evidence to the jury, that Abigail Clark was authorized, by an order of the court in Alabama, to sell the slaves, or she could convey no legal title to the defendant.

2. That it must also appear by evidence to the jury, that James McDonald was authorized, either by a legal purchase or by a power from the administratrix, to sell the slaves, or his conveyance could not divest the estate of Clark of the legal title in his representatives.

3. That unless both of the above facts appeared, to wit, the authority of the administratrix to sell, and the authority of Mc-Donald, either by a legal purchase or power of attorney from the administratrix, that the title to the slaves still remained in the legal representatives of John Clark, deceased.

4. That if the plaintiffs were entitled to recover, they were entitled to the value of the hire of the slaves, by way of damages, from the time the slaves came into the possession of Ventress.

The defendants' counsel also presented the court with the following points in writing, which they requested the court to give in charge to the jury :

1. That if the jury shall believe, from the evidence before them, that Abigail Clark became the administratrix of the estate John Clark, deceased, in the state of Alabama, and, as such administratrix, held and possessed the slaves sued for, till her intermarriage with John Farrington, and that said Farrington and wife, in virtue of the administration of said Abigail, were also

[Ventress et al. v. Smith.]

possessed of the slaves sued for ; and that the possession of these defendants, or their testator, of the slaves sued for, was acquired by, through, or from the said Farrington and wife, either directly or indirectly ; then the plaintiff, as administrator to collect the estate of John Clark, deceased, has no right to recover in this action against these defendants.

2. Will charge the jury—if they shall believe, from the evidence, that the slaves sued for in this action were, since the death of said John Clark, held and possessed by Abigail Clark, his administratrix, in the state of Alabama, and that during her administration, she intermarried with John Farrington, and that Farrington and wife possessing said slaves by virtue of the administration of said Abigail, eloigned, wasted, embezzled, sold, or otherwise converted or disposed of them, in violation of their duties as administrators of said Clark's estate, by which *devastavit* of said administrators, the slaves sued for passed to the possession of one James McDonald, who brought them to this state and sold them for a full and *bona fide* consideration, to Lovic Ventress, defendants' testator, who purchased in good faith, and without notice of such *devastavit* of said administrator ; then the testator, Lovic Ventress, acquired a good title as against the plaintiff, and the verdict should be for the defendants.

3. Will charge the jury—that if they believe, from the evidence, the slaves sued for belonged to the estate of John Clark, deceased, at the time of his death, and passed into the possession of his administrators, in the state of Alabama, who embezzled and disposed of the same, in disregard of their duties as administrators ; but that defendants' testator, Lovic Ventress, became an innocent purchaser of said slaves, (in this state,) for a valuable consideration, without notice of the mal-administration of said Clark's estate in Alabama ; then they should find their verdict for the defendants.

The court refused to instruct the jury in all or either of the several points as sought for and requested by the defendants' counsel, as aforesaid ; but did charge the jury as requested by the plaintiff, except upon the fourth point ; in which the court was of opinion that hire, as damages, could be recovered only from the commencement of the suit.

The counsel of the defendants excepted to the opinion of the court in charging as requested by the counsel for the plaintiff, and refusing to charge the jury as requested by them, on behalf of the defendants.

The defendants prosecuted this writ of error.

The case was argued by Mr. Jones for the plaintiffs, and by Mr. Key for the defendant in error.

Mr. Jones, for the plaintiff, maintained—

1. That the letters *ad collégendum* from the court of probates in Mississippi vested not in the plaintiff below, but in terms excluded, any title to the possession of, or to maintain any possessory action for the property in question, under the peculiar circumstances and relations of that property and of these parties; even if a good title were shown in the legal representatives of Clark in Alabama.

2. That the process of the suit in the record shows a discontinuance and a mis-trial.

3. That the evidence excepted to by defendants in the first bill of exceptions, and admitted by the court, was inadmissible.

4. That the right of Ventress (defendants' testator) by purchase, bona fide, for a valuable and full consideration, without any notice of breach of trust or other fraud in the vendors, who had possession and the right of possession, clothed with a legal title; a purchase consummated long before the second letters of administration granted to the plaintiff in Alabama, and his letters *ad collégendum* in Mississippi, and whilst the original letters of administration, granted to the vendor in Alabama, stood unrevoked and in full force; were valid and indefeasible: consequently, that the several opinions and instructions, both those delivered and those rejected by the court below, and both affirmatively and negatively disparaging that title, and sustaining the plaintiffs' title, are erroneous.

Upon the first point, Mr. Jones cited Stat. Edward 3, ch. 11. Lord Coke's Commentaries on the Stat. of Edw. 3, 2 Inst. 397, 398, Stat. 4 Edw. 3, 31 Edw. 3, 1 Comy. Dig. Adm. E. 13, 2

[Ventress et al. v. Smith.]

Doug. Rep. 545, 1 Hen. Black. 184, 1 Bos. and Pull. 330, 1 Maul and Selw. 409.

Upon the 4th point, Mr. Jones cited 4 T. Rep. 625, 621, 1 Bos. and Pul. 293, 7 Ves. 152, 8 Ves. 209, Williams on Executors and Administrators 1 vol. 303.

Mr. Key, for the defendant in error, contended, that the testimony objected in the first exception was peoperly admitted. The instruction prayed for by appellee properly given; and those asked by appellant properly refused.

He cited 1 Williams on Executors and Administrators 333, 609, 611, Statutes of Mississippi 281, Walker's Rep. 386, Holt's Nisi Prius Reports 485, 1 Payne's Rep. 400, 2 Wheaton's Rep. 263, Randolph's Rep. 195, 4 Mumford 194, Laws of Alabama (Toulmin's Digest) 334, act of 1809.

Mr. Justice THOMPSON delivered the opinion of the Court.

This case comes up from the district court of the district of Mississippi, upon a writ of error. It is an action of detinue, to recover five negro slaves, of which John Clark, deceased, was the owner. The plaintiff, in the court below, prosecuted, as administrator ad colligendum, under letters of administration granted by the judge of probate of Wilkinson county, in the state of Mississippi. The action appears, by the record, to have been commenced in the year 1822 against Lovic Ventress; and after the cause was at issue, and before trial, Lovic Ventress died, and a scire facias, tested the first Monday in April 1823, was issued against Elizabeth Ventress, administratrix, &c., who afterwards appeared in court, and the cause, as is stated upon the record, was legally continued. At a subsequent term of the court, the cause being legally continued, as is alleged, the death of the defendant, Elizabeth Ventress, the administratrix, was suggested and admitted to be true; and thereupon a scire facias was issued to the present defendants in the court below, as executors of Lovic Ventress, tested the first Monday in October 1826, and due service thereof upon the defendants was returned   The record then states that afterwards, in January term 1834, to which term the cause was regularly continued by consent, the parties

[Ventress et al. v. Smith.]

appeared by their attorneys, and the cause was tried, and a ver-
dict found for the plaintiff.   Upon the trial two bills of exceptions
were taken.   One in relation to the admissibility of evidence,
and the other upon instructions given by the court to the jury
upon the merits of the case ; which will be noticed hereafter.

It will be necessary, in the first place, to dispose of two objec-
tions, arising upon the record, which have been raised against
the plaintiff's right to maintain the present action :

1. That the letters of administration ad collegendum, granted
by the court of probates in Mississippi, did not vest in the plain-
tiff any right or title to the possession of the property in question,
or authorize him to maintain an action to recover it, even if a
good title was shown in the legal representatives of John Clark
in Alabama.

2. That the record shows a discontinuance of the cause, and a
mis-trial.

It may be proper to observe, with respect to the first of these
exceptions, that as it rests upon the disability of the plaintiff to
sue, it ought to have been pleaded in abatement; but as we think
the objection untenable, in whatever form it is raised, we shall
proceed to notice it in the manner in which it is now presented.

These letters of administration recite, that John Clark, of
Clark county, in the state of Alabama, as it is said, had, at his
decease, personal property within this state, the administration
whereof cannot be immediately granted, but which, if speedy
care be not taken, may be lost, destroyed, or diminished ; to the
end, therefore, that the same may be preserved for those who
shall appear to have a legal right or interest therein, we do
hereby request and authorize Neal Smith to secure and collect
the said property, wheresoever the same may be in this state, or
in Wilkinson county, whether it be goods, chattels, debts, or
credits, and to make a true and perfect inventory thereof, &c.

These letters of administration were granted under the author-
ity of an act of the legislature of Mississippi, (Laws of Missis-
sippi, 281,) which empowers the chief justice of the orphans'
court, in the county in which such justice resides, whenever he
may deem it necessary, to appoint an administrator to collect to-
gether the goods of the deceased, for the purpose of depositing

them in the hands of the chief justice; out of which he shall pay the debts of the deceased, and be liable, in law, as other administrators. The argument at the bar is, that the power given to the administrator, does not authorize him to bring a suit. That no such power is expressly given, nor is it implied in the power to collect. The words of the statute are, general, to collect together the goods of the deceased. The power vested in the magistrate to appoint such administrator, is discretionary whenever he may deem it necessary. And if the words of the act, upon any reasonable interpretation, will admit of a construction which will uphold the authority given by the letters of administration, they ought not to be so construed as to impute to the magistrate an unauthorized exercise of power. And if we look to the letters of administration, the power to sue is necessarily implied in the language there used: "We do hereby authorize the said Neal Smith to secure and collect the said property, whether it be goods, chattels, debts, or credits," &c. These words are amply sufficient to authorize the bringing of suits, if necessary for the purpose of executing the power, and is certainly no forced interpretation of the word collect, as used in the statute, to consider it as implying the authority to bring suits. In the case of Irwin and Wright v. Peak, Walker Rep. 386, decided in the supreme court of Mississippi, in the year 1831, it was held that an administrator ad colligendum, may bring suits. This power, however, in the view of the court, rested upon a statute referred to in the opinion, but which has not been produced on the argument of this case. But the decision is so recent, and referring expressly to the statute, we think we may safely rely upon it as an authority to sustain the right to sue, under the power given by the letters of administration in this case. And we the more readily adopt this conclusion, because we think the right to sue is necessarily implied in the authority to collect the goods, chattels, rights, and credits. The grant of the power carries with it all the usual, ordinary, and necessary means to effectuate the beneficial exercise of the power.

2. The proceedings, as stated upon the record to continue the cause, appear to have been in conformity to a statute of that state, (Mississippi Statutes 238,) which provides that, when any

suit shall be depending in any court, and either of the parties shall die before judgment, the executors or administrators of the deceased, in case the cause of action by law survives, shall have full power to prosecute or defend such action; and the court is authorized and required to render judgment for or against the executor or administrator, as the case may require; and a scire facias is authorized to be issued to call in the executor or administrator to make himself a party; and such was the course adopted in the present case, as appears from the record. Upon the death of Lovic Ventress, a scire facias issued to Elizabeth Ventress, the administratrix, who appeared and became a party to the suit, and the cause was continued; and upon the death of the administratrix another scire facias issued, to call in the defendants, the executors of Lovic Ventress, who appeared and became parties to the suit, which, according to the record, was regularly continued, by consent, to the term of the court when the cause was tried. For what reason or under what circumstances Elizabeth Ventress was appointed administratrix of Lovic Ventress, when the defendants were his executors, does not appear. But the court will not intend that it was without authority. Circumstances may readily be supposed to have existed, that would require the appointment of an administration for some special purpose. Whether she was a general administratrix, or only one with limited powers for some special purpose, does not appear. But when the record states that the cause was regularly continued, by consent of the present parties, who were fully competent to give such consent, there can be no ground upon which this court can now consider the cause discontinued.

3. The next objection arises upon a bill of exceptions taken at the trial, relative to the admission of evidence.

The plaintiff offered in evidence the deposition of Neal Mc-Nair, and the objection arises upon the answer to the tenth cross-interrogatory, which is as follows: " Were they not sent away, or intrusted to some person to be removed and sold by the administrator or administratrix, or other personal representative of John Clark, in the State of Alabama ?" Answer: "Deponent saith he has reason to believe, and doth believe, that the said ne-

[Ventress et al. v. Smith.]

groes were removed and sold, not by the authority or request of the administratrix or any other person representing said estate." This answer was objected to on the part of the defendant, but admitted by the court, to be read to the jury. The whole deposition is not set out in the bill of exceptions; and this question and the answer standing alone, unconnected with the antecedent and subsequent interrogatories and answers, are in a great measure unintelligible. The very form of the interrogatory, shows the question to have had relation to some antecedent inquiry, and is vague and indefinite. "Were they not sent away, or intrusted to some person (naming no one) to be removed and sold by the administrator or administratrix, or other personal representative of John Clark?" It seemed to be a fishing inquiry, that would hardly admit of a direct and positive answer. Had it been a direct question to some specific fact, the belief of the witness would be no legal answer. The belief of a witness is a conclusion from facts. The witness should state facts, and the conclusion to be drawn from them, rests with the jury. Although this answer, standing alone, may not be strictly admissible; yet, when connected with other facts of the deposition, it might not not be objectionable. Subsequent inquiries might have drawn from the witness the facts upon which his belief was founded; and all being submitted to the jury, the belief of the witness might be at least rendered harmless. It does not appear how or under what authority this deposition was taken, or whether the parties were present or not. If they were, and no objection was made to the answer, it ought to be considered a waiver; and the exception not allowed at the trial. It is incumbent on the plaintiff to make out the error clearly and satisfactorily; every reasonable intendment should be in favor of the judgment; and we think the exception too vague to justify a reversal of the judgment.

4. This second bill of exceptions embraces the merits of the case, and turns upon the validity of the purchase of the slaves by Lovic Ventress in his lifetime. The facts upon which the court was called upon to instruct the jury on this question, are briefly these:

The slaves in controversy, were the property of John Clark,

[Ventress et al. v. Smith ]

of Alabama, and in his possession at the time of his death, in the year 1818.   This widow, Abigail Clark, was appointed administratrix of his estate, and in May 1819, intermarried with John Farrington, and in June 1819, filed an inventory of John Clark's estate, including therein the slaves in question.   On the first of November of the same year, the letters of administration to her were revoked, and administration granted to Neal Smith, the present plaintiff, in the court below.  In August, 1819, the county court of Clark county, in the state of Alabama, authorized Abigail Farrington, the administratrix of John Clark, to sell all the personal property of John Clark except the negroes; and it does not appear that any order of sale of the slaves of John Clark had been obtained.   The defendants offered no other evidence of title to the slaves, than a bill of sale from James McDonald to the defendants' testator, in Wilkinson county, in the state of Mississippi, dated November 2, 1819, for the consideration of nineteen hundred dollars, which was paid at the time of sale, and which was deemed a full and fair value of the slaves.  Upon this evidence the plaintiffs' counsel requested the court to charge the jury—

1.   That it must appear in evidence to the jury, that Abigail Clark was authorized by an order of the court of Alabama, to sell the slaves, or she could convey no legal title to them.

2.   That it must also appear by evidence to the jury, that James McDonald was authorized, either by a legal purchase or by a power from the administratrix; to sell the slaves, or his conveyance could not divest the estate of Clark of the legal title in his representatives.

3.   That, unless both of the above facts appeared, to wit, the authority of the administratrix to sell, and the authority of McDonald, either by a legal purchase or power of attorney from the administratrix, that the title to the slaves still remained in the legal representatives of John Clark.  These instructions the court gave.  A fourth was requested, which the court refused to give, and which it is unnecessary here to notice.

The defendants' counsel also requested the court to instruct the jury uopn certain points, substantially as follows :

1.  That if they belive, from the evidence, that Abigail Clark

[Ventress et al. v. Smith.]

became the administratrix of John Clark, deceased, and, as such, held possession of the slaves in question, and that after her inter-marriage with John Farrington, she and her husband were in pos-session of them, and that the possession of the slaves by the de-fendants or their testator, was acquired directly or indirectly from or through Farrington and his wife, then the plaintiff, as adminis-trator to collect the estate of John Clark, has no right to recover in this action against the defendants.

2. If they believe, from the evidence, that Farrington and his wife, so possessing the slaves by virtue of the administration aforesaid, had wasted, embezzled, sold, or otherwise converted the slaves, in violation of their duty as administrators, by which devastavit the slaves passed to the possession of one James McDonald, who brought them to the state of Mississippi and sold them to Lovic Ventress, the defendants' testator, for a full and valuable consideration, and that he purchased them bona fide without notice of such devastavit, then Lovic Ventress acquired a good title as against the plaintiff, and the verdict should be for the defendants.

3. That if they believed that the slaves belonged to the estate of John Clark, and passed into the possession of his administra-tors, who embezzled and disposed of them in disregard of their duty as administrators, but the defendants' testator, Lovic Ve-tress, became an innocent purchaser of the slaves for a valuable consideration, without notice of the mal-administration of said Clark's estate in Alabama, then they should find a verdict for the defendant.   These instructions the court refused to give.

It is unnessary to notice separately the several instructions prayed by the parties, respectively.   The general question arising under them, and one which lies at the foundation of the action, relates to the sale of the negroes by Abigail Clark, the administra-trix of John Clark.   The several instructions prayed on the part of the plaintiff and given by the court, assume that, in order to divest the plaintiff of the right to recover as the present administrator of John Clark, it must be shown that his first administratrix had authority to sell the slaves by an order of the court in Alabama; and that James McDonald was authorized either by purchase from the administratrix or by authority from her, to sell the slaves,

in order to divest the representatives of Clark of the title, and take trom the plaintiff the right to recover. The principle assumed in the instructions asked on the part of the defendants, is, that the administratrix of Clark being in possession of the slaves, and that possession having passed directly or indirectly to the defendants, the plaintiff, as administrator ad colligendum of John Clark, cannot recover in this action. And that admitting the administratrix had, by her conduct with respect to the slaves, committed a devastavit; yet if the defendants' testator purchased them bona fide and for a valuable consideration, without notice of such devastavit, he acquired a good title to the slaves, and the plaintiff had no right to recover. It may be observed here that the case is entirely silent in the statement of the evidence with respect to notice by the defendants' testator, of the situation of these slaves. The instruction prayed, however, was subject to the decision of the jury upon that point; and we assume, in the consideration of the case, that Lovic Ventress was a bona fide purchaser without notice, and rest the question entirely upon the want of authority in the administratrix of Clark to sell the slaves. It may be observed, in the first place, that the letters of administration to her were revoked before the sale to the defendants' testator. The revocation was on the first of November, 1819, and the bill of sale bears date on the day after. There may be some mistake, however, in this, and we place no reliance upon it; as the want of authority in the administratrix is clearly established on other grounds. The statute of Alabama, (Laws Ala. p. 334,) declares, that it shall not be lawful for any executor or administrator to dispose of the estate of any testator or intestate at private sale except where the same is directed by the will of the testator; but that in all cases where it may be necessary to sell the whole or any part of the personal estate, application must be be made to the orphans' court for an order of sale, which sale is required to be at public auction, after giving notice thereof as pointed out by the statute. The sale of these negroes, although bona fide and for a valuable consideration, was not made according to the provisions of this law. It was a private sale, and made without any order from the court. The order of sale expressly excepts the negroes. The sale was then not only without au-

thority, but in express violation of the provisions of the statute. Such a sale cannot be supported upon any principles of law. In the case of the executors of Emos v. James (4 Mum. 194,) it was held by the court of appeals of Virginia, that the sale of a slave belonging to the estate of the testator by a person named in the will as one of the executors, but who, at the time of the sale, had not qualified or given the bond required by a statute of that state; was void against the executor who had qualified: although the sale was bona fide and for a valuable consideration. It was admitted, that if the question was to be decided upon the principles of the common law, without regard to the act of assembly, the sale would have been valid, the power of the executor being derived from the will. But he not having qualified and complied with the statute, by giving the bond required, the foundation of his authority was done away; and all his acts were invalid, and the sale illegal and void. The present is a much stronger case. The want of authority in the executor to sell in that case rested upon the construction of the statute; influenced, in some measure, by the policy which governed its enactment. But in the present case, the sale was against the express exception in the order of sale, and in violation of the positive prohibition in the statute to sell at private sale. The law in this class of cases is well settled: that executors and administrators, in making sales of property, must comply strictly with the requisites of all statutary provisions on the subject; and that, unless every essential direction of the law is complied with, all whose interests are affected by the authority to sell are not concluded by the sale; (7 Mass. Rep. 488,) unless, from a long acquiescence, a foundation is laid for a fair and reasonable presumption, that the requisites of the law had been complied with. No such presumption can arise in this case. It is a general rule of law, that a sale by a person who has no right to sell, is not valid against the rightful owner. Authority given to executors and administrators to sell, is a personal trust and must be strictly pursued; and if they transcend their authority in any essential particular, their act is void. (4 John. Ch. 368, 6 Con. Rep. 387.) It was a maxim of the civil law that, *nemo plus juris in alium transferre potest, quam ipse habet;* and this is a plain dictate of common sense:

It was also a principle of the English common law that, a sale out of market overt, did not change the property from the rightful owner; and the custom of the city of London, which forms an exception to the general rule, has always been regarded and restricted by the courts with great care and vigilance, that all such sales should be brought strictly within the custom. (Com. Dig. Tit. Market E.) It has sometimes been contended, that a bona fide purchase for a valuable consideration and without notice, was equivalent to a purchase in market overt under the English law, and bound the property against the party who had right. (1 John. Rep. 478.) But we are not aware that this Saxon institution of markets overt, which controls and interferes with the application of the common law, has ever been recognized in any of the United States, or received any judicial sanction. At all events, no local usage or custom has been shown applicable to the present case, to take it out of the general principles of the law of sales. And although the defendants' testator was a bona fide purchaser, for a valuable consideration and without notice; the sale being without authority and against law; he acquired no title that will bind the property against the party who has right.

The judgment of the court below must accordingly be affirmed with costs.

This cause came on to be heard on the transcript of the record from the district court of the United States for the district of Mississippi, and was argued by counsel, on consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said district court in this cause be, and the same is hereby, affirmed, with costs and damages, at the rate of six per centum per annum upon the sum adjudged by the said district court, to the plaintiff in this court, in case the said plaintiff cannot have the said negro slaves delivered to him.