## HOPPER, Adm'r, *vs.* STEELE.

1. If an administrator or executor, having no authority to do so, either by order of the Orphans' Court, or the will, sell the property at private sale, the sale is illegal and void as to the distributees and creditors of the estate. (DARGAN, C. J.—dissenting, and holding that the sale is voidable merely, and is to be treated as valid until avoided by them.)

2. But the administrator or executor, who makes such a sale, being *in pari delicto*, is estopped from denying its validity, and cannot, therefore, maintain an action for the recovery of the property.

3. The sale, being void as to the distributees and creditors, and operating merely as an estoppel upon the administrator or executor, who made it, it follows that the title to the property is not thereby changed, and that when a party, capable of suing, succeeds to the administration, the right of action immediately attaches in him, and he may recover the property from the purchaser or one claiming under him.—(DARGAN, C. J., dissenting.)

4. In such case, there being no right of action in any one during the continuance of such administrator's or executor's term of office, the statute of limitations does not begin to run until the appointment of his successor.

ERROR to the Circuit Court of Lowndes. Tried before the Hon. Nathan Cook.

THE plaintiff in error, as administrator *de bonis non*, with the will annexed, of Richard S. Hickman, deceased, brought his action of detinue against the defendant in error, to recover the possession of a certain slave. The facts appear in the opinion of the court.

WATTS & JACKSON, for the plaintiff in error:

1. The statute of limitations never begins to run until there is some person in existence authorised to sue—(see Johnson, adm'r, v. Wren, 3 Stew. 172)—nor until a right of action

accrues.—See Neal v. Cunningham, 2 Port. 171; Thorington v. Lucas, 7 Ala. 605; Chitty on Bills, 609, and notes 1 and 2.

2. An administrator has no right to dispose of property of the estate at private sale. If he does so, the sale is absolutely void, not merely voidable.—See Weir v. Davis, 4 Ala., 442; Dearman v. Dearman, 4 ib. 521; Ventris v. Smith, 10 Peters, 161; Fambro v. Gant, 12 Ala. 298, and authorities therein cited.

3. Where one, being an administratrix, marries, and her husband sells at private sale, or sells, without an order from the Orphans' Court, the property of the estate during coverture, she and her husband cannot, whilst they remain administratrix and administrator, nor can she after her second husband's death, maintain suit to recover the property thus sold.—Pistole v. Street, adm'r, 5 Port. 64; Fambro v. Gant, *supra.*

4. The universal rule of law is, that heirs cannot bring suit to recover property belonging to deceased.—See Kelly's Heirs v. Kelly's Adm'r, 9 Ala. 908, and authorities there cited; Woodin v. Bagly, 13 Wend. 453; Miller v. Eastman, 11 Ala. 609; Welch v. Welch, 14 ib., 76. And the general rule in equity is the same as at law.—See Miller v. Eastman, 11 Ala. 609, and authorities there cited; Bradford v. Felder, 2 McCord, 168; Jenkins v. Freyer, 4 Paige, 47, and authorities. This case is not within the exceptions to the rule.

5. The legal title is vested in the administrator *de bonis non* of all the personal estate unadministered by the administrator in chief.—See Kelly's Heirs v. Kelly's Adm'r, *supra;* Ventris v. Smith, 10 Peters, *supra,* and other authorities to same point to be found *passim.* And he has the right to maintain a suit at law for all such property, even although it has been fraudulently disposed of by the previous administrator, if it can be identified. See Swink's Adm'r v. Snodgrass, 17 Ala. 653. Can this case be distinguished, in principle, from the one at bar?

6. It follows from the above positions, that in this case there was no person in existence authorised to maintain suit until the appointment of the administrator *de bonis non,* and therefore the statute of limitations did not commence running until his appointment.

STONE & JUDGE, for the defendant:

1. The administrator *de bonis non* has no right to control or

possess himself of the assets which were administered, wasted, or converted by his predecessor.—Wernock v. McMurdo, 5 Rand. 51; Judge of Benton County v. Price, 6 Ala. 36; Nolly v. Wilkins, 11 Ala. 872; and the Act of 1806, Dig. 221, § 4, applies only to removed administrators—Willis v. Willis, 9 Ala. 721; Fisher v. Bassett, 9 Leigh, 119; Johnston v. Lewis, Rice Eq. 40; Neal v. Haythorp, 3 Bland, 551.

2. An administrator, by a *devastavit*, or by using the assets in a manner inconsistent with his trust, subjects them to the payment of his individual debts.—Williamson v. Branch Bank at Mobile, 9 Ala. 906.

3. The administrator *de bonis non* can have no greater right to call on the transferee of an administrator in chief, who has converted the assets, than he has to call on such administrator himself.

4. The defendant in error has been in the undisturbed, adverse possession of the property for twenty years; but if the court should be of the opinion that the statute of limitations does not run in this case, then we contend that the charge of the court worked no injury to plaintiff in error, as it is shown by the record that he never can recover. For such harmless error, the court will not reverse.—Smith v. Houston, 8 Ala. 737—also, 11 Ala. 149, and many other decisions of this court.

CHILTON, J.—The testator died in the year 1827, his wife qualifying as his executrix. She married John Davidson in 1828, who sold Hannah, one of the slaves belonging to said estate, to John Steele at private sale. John Steele immediately took possession of said slave, and afterwards, in 1830 or 1831, sold said slave to the defendant. The negro sued for is the child of said Hannah and has been in the defendant's possession since the year 1830, and, we are left to infer, was born of Hannah since her sale by Davidson to John Steele. The will of Hickman did not authorise a private sale, nor was there any order or authority given by the Orphans' Court, authorising Davidson or his wife, the executrix, to dispose of the slave. In 1831, John Davidson died, and his said wife continued to be the executrix of Hickman's estate, until the 20th February 1849, when she resigned and the plaintiff in this suit was appointed administrator *de bonis non, cum testamento annexo*. The court

charged, under the above state of facts, that the statute of limitations constituted a complete bar.

1. It is well settled by the decisions of this court, that if the administrator or executor, having no power to dispose of the property by the will, sell at private sale, such sale is void.— Weir v. Davis, 4 Ala. 442; Dearman v. Dearman & Coffman, ib. 521; Fambro v. Gant, 12 ib. 298; Clay's Dig. 223, § 13; Ventris v. Smith, 10 Pet. 161.

2. Though such sale is void as against the *cestuis que trust*, the distributees and creditors, the administrator who makes it cannot take advantage of his own wrongful sale to set it aside, but creates by such sale an estoppel personal to himself. Pistole v. Street, 5 Port. 64; Fambro v. Gant, *supra.* The contract is illegal, but having been executed and the parties *in pari delicto*, the law will not interfere *as between them*, (Black & Manning v. Oliver, 1 Ala. 449;) and as the wife, executrix, is concluded by the act of her husband, whom she marries pending her fiduciary character, she is bound by his estoppel, for it is her act as well as his.—2 Wm. Ex'rs, 632-3; Pistole v. Street, *supra.*

3. As the private sale does not change the property out of the estate, but merely destroys the right of action by the administrator, who shall not be allowed to aver against his own sale, when a party succeeds to the estate who may sue, the right of action immediately attaches in him, and he can recover the property, for it remains in specie and has never been administered by the administrator-in-chief; for a void act cannot amount to an administration. When I say *void*, I mean void as to all persons interested, except the immediate parties to the act.—Swink's Adm'r, v. Snodgrass, 17 Ala. 653.

4. The statute of limitations never begins to run unless there is some one in existence capable of suing. " *Contra non valentem agere non currit præscriptio.*"—Murray v. East India Co., 5 B. & Adolph. 204; Angel on Lim. 55; Pothier Trait des Obligationes, 645.

As then the sale, by virtue of an express statute, does not divest the estate of the property in the chattel, and the administrator-in-chief or executor estopped himself by his own act from suing, to which act alone the defendant must look for his title, and no right of action vested in any one until the appointment of an administrator *de bonis non*, which appointment was within

six years from the time the suit was commenced, and as the cases of Swink's Adm'r v. Snodgrass, and Ventris & Smith, *supra*, hold the administrator *de bonis non* may sue, I conclude the statute of limitations is no bar, and think the judgment should be reversed.

It may be said, Swink's Adm'r v. Snodgrass goes upon the ground of fraud in the administrator-in-chief. Be it so. I see no difference between a sale made in violation of his trust, and in the teeth of the statute, and that case. In neither case does the tortious conversion amount to an administration, except at the election of the distributees in a settlement with the administrator-in-chief, as was held in Kavanaugh v. Thompson, 16 Ala. 818, or at the election of the administrator *de bonis non*, who represents them, and is liable unless he acts in good faith in making the most beneficial election.

PARSONS, J.—After examining all the authorities to which we have been refered and some others. I feel constrained to concur in the foregoing opinion. The case of Pistole v. Street is a direct authority to the point, that the second husband of Hickman's administratrix, in his life time, or she herself after his death, could not recover the negro that he sold at private sale, under which sale, Mr. Steele, the defendant in this case, holds the negro that is now sued for. As determined in the case of Pistole v. Street, the sale, though contrary to the statute, was not void to all intents and purposes, though it would be void at the instance of the distributees and others interested in the estate. It bound the husband of the administratrix who made the sale, and it bound her. Therefore, no action ever accrued to them, during their joint lives, or to her after his death, to recover the slave that was sold by him. This is manifest from the principles of the English law, but, according to that law, it is also manifest that as Mr. Steele holds under an honest purchase from the husband of the administratrix, his title is good against all persons, not claiming paramount to the testator. Here, however, the sale was illegal, because in violation of the statute. The question, therefore, is, whether the administrator *de bonis non* can recover the slave, notwithstanding the sale by the husband of the first administratrix? This is not an open question here; it was settled in principle in Swink's Adm'r v. Snodgrass, 17 Ala. 653.

In that case it was held, that where assets of the estate had been fraudulently disposed of by the first administrator, without consideration, an administrator *de bonis non* might recover them, if they could be identified, by an action at law.    That was because they were fraudulently disposed of, without consideration. In the present case, the property was illegally disposed of, for a consideration, it is true, but it was not a consideration to the distributees, unless they elected to take it, of which there is no evidence, nor was it a consideration to the administrator *de bonis non*.    After this explanation, the two cases are, I think, the same in principle.    Swink's administrator fraudulently disposed of some of the property of the estate to another person.    In this case, the administrator, in right of his wife, illegally disposed of the slave in question to another person.    This disposition, in each of the cases, concluded the administrators who made them, but was void as against the distributees and others interested in the estate.    The disposition in each of the cases was a conversion, or as it is sometimes called, an administration, for which the administrators would be held liable to distributees, creditors, and others interested in the estate.    But this the distributees and others interested in the estate may waive, and pursue the property disposed of.    The difficulty with me is, in the question whether the administrator *de bonis non* is not concluded by a sale made by his predecessor, whether fraudulent or illegal.    But as it was settled in the case of Swink's Adm'r v. Snodgrass, that he is not, where the sale was fraudulent, I feel bound now to hold that he is not, if the sale be illegal, for I cannot perceive a substantial difference, in this respect. The result is that an administrator, in respect of selling the property of the estate, is put upon the statute for his authority, and like other special agents, he must act according to the letter of his authority, or his acts are void against every person but himself.    Upon this view, the question of the right of an administor *de bonis non* to recover what his predecessor had thus converted or administered, (a question which has elsewhere been settled in the negative very frequently,) is not the same that it is in England and in the States of this Union, in which there is no such statute.    But it is a question in which I felt great difficulty, notwithstanding the statute.    I did not sit in the case of Swink's Adm'r v. Snodgrass, but I am not now disposed to depart from

it. It is founded, indeed, on recent English authority, which seems to sustain it.

Then, no action at law accrued in favor of any one to recover the negro in question, until Hickman's administrator *de bonis non* was appointed, which was within the last six years before this suit was brought, and consequently, the statute of limitations is no bar. The judgment must therefore be reversed and the cause remanded.

DARGAN, C. J.—In the case of Pistole v. Street, 5 Port. 64, this court decided that where a woman, being administratrix, married, and her husband during the coverture sold the personal estate of the intestate at private sale, she could not after the death of her husband recover the goods back as administratrix. In the case of Fambro v. Gant, 12 Ala. 298, it was also decided by this court that no title passed to the purchaser by a private sale of the goods of the intestate made by an administrator, although the administrator is estopped by his own act from recovering them back; nor can he by suit coerce the payment of the purchase money, although the purchaser retain the possession of the goods. These two decisions, in my humble judgment, are incompatible with each other, and the last asserts propositions that cannot be reconciled with the principles of law, nor the dictates of common justice. For if an administrator should sell the goods of his intestate, at private sale, notwithstanding our statute, he may be charged with the value of the goods at the instance of creditors or distributees; and if he be thus charged with the goods, is he not to recover the price from his purchaser? Are we to hold that the purchaser in such a case has acquired title without paying the price? This court has decided that the administrator is estopped from recovering the property back, that he cannot recover the purchase money, and also that the distributees may elect to charge him with the price agreed to be given.—Kavanaugh & Wife v. Thompson et al., 16 Ala. 818. I hold that these decisions cannot be reconciled with each other, or permitted to stand, without producing results that all would at once pronounce to be as repugnant to law as to justice. I can never bring my mind to assent to the proposition that an administrator shall be liable to be charged with the value of goods, sold by him at private sale, and yet deprived of all rem-

edy to recover back the goods or the price agreed to be given for them.   I, therefore, must lay down a rule for myself, and although it is opposed to high authority, I shall cheerfully submit to the test of time to determine its correctness.   At common law, it is clear that an administrator could sell goods of the deceased at private sale, and such an act would be a full administration of them.   The purchaser would get a good title, and the administrator the price.   But by our statute, it is enacted, " That it shall not be lawful for an executor, administrator, or guardian, to take the estate, or any part thereof, of any testator or intestate at its appraised value, or to dispose of the same at private sale, unless directed by the will of the testator; but in all cases, where it is necessary to sell all, or any part of the personal estate of any testator or intestate, it shall be the duty of the executor or administrator to apply to the Orphans' Court of their county for an order of sale, and upon obtaining the same, to advertise the time and place of such sale, at three or more public places in the county, at least thirty days previous to the day of sale ; and then proceed to sell the same at public sale to the highest bidder, giving at least six months credit—the purchaser giving bond with approved security."   What influence does this act have upon a private sale by an administrator of the goods of the deceased ?   If it renders the sale entirely void, then I should hold that the administrator could reclaim the goods, for if the sale was void in toto, no title passed to the purchaser.   But it cannot be denied by any one that notwithstanding this act, the legal title to the goods of an intestate vests in the administrator, not in the distributees.   The administrator is a trustee, holding the legal title for the benefit of creditors and distributees.   If he assign the legal title to another, it will pass as against him, as the legal title will pass by the assignment of any other trustee.   The statute did not intend to affect in any manner the legal title.   It was passed for the benefit of distributees and creditors, who are merely the *cestuis que trust;* and being intended for their benefit, they can take advantage of it, and set aside the sale, but no *other person can.*   If they see fit to receive the price of the goods, instead of the goods in specie, the sale is confirmed by them, and the title of the purchaser is complete, as it is good against all the world by the sale of the administrator, save creditors and distributees, who, by virtue of

the statute, can claim to set it aside. The sale then of an administrator is not absolutely void, but is voidable merely at the election of creditors or distributes, and being voidable and not void, the administrator can recover the price agreed to be given, unless the sale has been avoided by those who have the right to set it aside. The purchaser may hold the goods against all the world, except as against the distributees, legatees, or creditors. If none of them set it aside, no one else can. If they do, the purchaser must then look to the administrator for indemnity. Holding these views, justice can be dealt out to all, but if we hold otherwise, injustice must follow, such as neither the statute nor common law intended.

But, it is insisted that this view is in conflict with the decision made at the last Term, of Snodgrass and Swink's Administrator. In that case, the administrator-in-chief attempted fraudulently to alien the goods of the deceased, the pretended purchaser colluding with him, without having paid any thing for them, or having agreed absolutely to do so. We held such a sale void, as well against the administrator *de bonis non* as against the creditors and distributees, and that it was so, I think, is fully shown by the authorities cited in the opinion delivered in that case. The only question, indeed, was whether the administrator *de bonis non* should be driven into a court of equity that he might take advantage of the fraud. I saw then and still see no reason why a court of law could not take cognizance of the fraud and hold the pretended sale void. But in the case before us, there is no fraud; at common law the sale would have been perfectly good, and the question is, how far is it affected by the statute? The statute, in my judgment, should be construed in reference to the rights of those, whose interest might be injured by a private sale, to-wit, distributees, legatees, and creditors. At their instance the sale should be set aside, but not at the instance of any one else,—that is, the sale is void, if they see fit to avoid it; if they do not, it is valid against the world. If this view be correct, it follows that the sale is not absolutely void, a mere nullity, but voidable only, and will remain valid until avoided. Holding this to be the correct construction of the statute, I can see no conflict between the case of Swink's Adm'r v. Snodgrass, and the view here taken. In that case, the administrator *de bonis non* could set aside the sale for fraud at com-

mon law, but as there is no fraud in this case, the sale can be set aside by force of the statute alone, and the administrator *de bonis non* cannot invoke the aid of the statute. As as to him, the sale of the negro was a valid act—a complete administration, and he derived no title to the slave by virtue of his letters of administration.

I, therefore, think the judgment should be affirmed, not because the statute of limitations was a bar to the action, but because the plaintiff failed to show any title whatever.