# APPENDIX.

## KENYON v. KENYON.

### [JANUARY 29, 1861.]

THE JURISDICTION TO HEAR, TRY, AND DETERMINE CAUSES IN DIVORCE is not the exercise of chancery or common-law jurisdiction.

THE PROBATE COURTS AND NOT THE DISTRICT COURTS have original jurisdiction in divorce cases.

APPEAL from the second district, Carson county. The opinion states the facts.

*Stephen De Wolf*, for the appellant.

*Broadhead & James*, for the respondent.

KINNEY, C. J.:

Susan Kenyon filed her petition in the district court for divorce, charging adultery, and praying that the bonds of matrimony between her and her said husband be totally dissolved, also for the care and custody of the children, and for a separate estate out of the property of the defendant. Kenyon answered, denying the facts charged, and alleged that the petitioner was herself guilty of the crime imputed to him.

A bill of exceptions was taken on the trial, by which it seems, among other objections made to the jurisdiction of the court and overruled, was one that the district court had no jurisdiction of the action of divorce.

The court decreed a divorce from bed and board, the care and guardianship of the children, and two thousand five hundred dollars as alimony to the plaintiff. The defendant

appeals, and contends, under the statutes of Utah, the district court has no jurisdiction whatever over cases of divorce. Other questions are raised, but this is the only one necessary to consider. Section 1, page 162, revised laws, is relied upon in support of this position. It provides " that the court of probate in the county where the plaintiff resides shall have jurisdiction in all cases of divorce and alimony, and of guardianship and distribution of property connected therewith."

If this statute is not in conflict with the organic act, it is supreme, and must be observed. It is not in conflict unless it either derogates from the powers exclusively conferred upon the district courts by the act, or confers unwarranted powers upon the probate courts.

Part of section 9 reads as follows: "And be it further enacted, that the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace. After providing for a supreme court, it enacts that the territory shall be divided into three judicial districts, and a district court shall be held in each of said districts by one of the justices of the supreme court, at such time and place as may be prescribed by law, and the judges shall after their appointments respectively reside in the districts which shall be assigned them. The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and justices of the peace, shall be as limited by law." Then follows an inhibition upon justices of the peace; and the section further provides that the supreme and district courts respectively shall possess chancery as well as common-law jurisdiction. The judicial power of the territory is vested in four separate and distinct courts. The legislation as to one of these courts, that of justice of the peace, is restricted and confined within certain well-defined bounds, but with this exception, the jurisdiction of the several courts shall be as limited by law, except that the legislature can not curtail the chancery and common-law jurisdiction of the supreme and district courts. No law of the territory can deprive these courts of the power to exercise this jurisdiction, because it is conferred by a higher authority. The portion of the section under consideration contains

two radical provisions, two insuperable legislative barriers:
1. Against conferring jurisdiction upon justices of the peace
in certain cases; 2. Against encroaching upon the common-
law and chancery jurisdiction of the supreme and district
courts.

Is the statute conferring exclusive jurisdiction upon the
probate courts in actions of divorce an interference with this
jurisdiction of the district courts ? To arrive at a proper
solution of this question, we must inquire what is meant by
chancery and common-law jurisdiction. Chancery jurisdic-
tion may be defined to be a judicial power to hear and deter-
mine all cases wherein the law, for its universality, can not
afford relief. Early in the history of jurisprudence the ad-
ministration of justice in the ordinary courts was found to be
incomplete, and hence arose the necessity of separate courts of
equity, which were organized about the reign of King Edward
III., for the purpose of correcting that wherein the law was
defective; and matters of fraud were among the objects to
which the jurisdiction of chancery was originally confined.
Soon after these courts were established in England a fierce
struggle arose between the law and equity courts in relation
to the jurisdiction and powers of each; but as we trace the his-
tory of English jurisprudence, we find the prejudice which at
first existed on the part of the common-law courts yielding
to the necessity and utility of a distinctive equity jurispru-
dence: *Arnold* v. *Grimes*, 2 G. Greene, 77. Follow this court
from the reign of Edward III., at first feeble and affording
relief in only a very few cases, until it branches out with
enlarged powers, and builds up a stately jurisprudence
of its own both in England and America, and with its ex-
tended jurisdiction we venture the assertion that as an equity
court, purely without the aid of statute, it has never enter-
tained a case of divorce so as to render a final decree between
the parties.

The application for divorce from bed and board is not
necessarily an equity proceeding. It may be either at law or
in chancery as the legislature may prescribe. In England until
very recently it was confined exclusively to the ecclesiastical or
spiritual courts, and in the United States the petition is filed
either in the chancery or law courts according to the provis-

ions of the statutes of the different states. The celebrated case of *Burch* v. *Burch*, recently tried in Illinois, appears to have been at law, and the entire case tried by a jury. In other states the chancellor hears and tries the issue—in some instances upon written evidence alone, and in others upon written and oral. We say, then, that the jurisdiction in divorce cases does not necessarily belong to chancery; and that clause of the organic act which confers upon the district courts chancery jurisdiction is not violated by the statute of Utah giving another court the right to try all cases of divorce. But the question arises, Is not the common-law jurisdiction of the court trampled upon?

Common-law jurisdiction we understand to mean the power of the court to hear and determine cases according to the rules of the common law. Statutes are frequently invoked in aid of the common law, but common-law courts as such are not dependent upon statutes unless they have become incorporated into and form part of the common law, which is often the case with old English statutes. It is no part of the powers of common-law courts to grant divorces from bed and board. Cases of this kind do not belong to their jurisdiction as common-law courts, and without the aid of statute such courts are powerless. Opposed to this view, we are referred to the case of *Wightman* v. *Wightman*, 4 Johns Ch. 343.

That was a case where the plaintiff married the defendant under a fit of insanity, had never lived with her husband, and had continued under abberation of mind with only occasional lucid intervals.

The question arose before the chancellor whether the court could take jurisdiction, as there were no statute in the state of New York for divorce *a vinculo matrimonii* except in case of adultery, and the cause for divorce must arise after marriage. The learned chancellor declared the contract null and void *ab initio*, on the ground that the plaintiff had not the capacity to contract, no more than if she had been an idiot. But the court expressly says that the power resides somewhere to declare the contract void, and concludes that it must reside in that court, as it has an exclusive jurisdiction, not only over cases of lunacy, but of matrimonial causes. This

decision, when properly examined, will be found to sustain the position we have assumed, that proceedings for divorce do not necessarily belong to either the chancery or common-law jurisdiction of the district courts.

Two questions only remain for our consideration: 1. Whether the legislature has granted to the probate courts, by giving it jurisdiction in all cases of divorce more judicial power than it is authorized to confer by the organic act; and 2. Whether the defendant below after having answered could raise the question of jurisdiction. The judicial power of the territory is vested in certain courts. Among those named is the probate court. The jurisdiction of these courts shall be limited by law. We have seen that neither the common-law nor chancery jurisdiction of the district courts is infringed by providing for the probate court to grant divorces. This being the case, it follows that under that clause, "limited by law," the legislature has the right to select another forum to try, and clothe another tribunal with the power to hear and determine, actions for divorce. This tribunal is the probate courts, and we see nothing incompatible with the provisions of the organic act or the organization of the district courts to prevent the legislature from passing the law conferring exclusive jurisdiction in such cases upon these courts.

But it may be said that the defendant could not object to the jurisdiction after having answered. This would be true if the court had jurisdiction of the subject-matter, and the judgment did not appear upon the face of the record *coram non judice.*

In the celebrated case of *Voorhies* v. *The United States,* 10 Pet. 161, the doctrine is well settled that if the judgment is not warranted by the constitution or law of the land, the most solemn proceeding can confer no right which is denied to any judicial act under color of law, which can properly be deemed to have been done *coram non judice,* that is by persons assuming the judicial function in the given case without lawful authority: *Wright* v. *Marsh, Lee & Delwan,* 2 G. Greene, 94. The line which separates error in judgment from the usurpation of power is very definite, and is precisely that which denotes the case when a judgment or decree is reversible only by an appellate court, or may be declared a nullity collater-

ally when offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case the record is absolute verity, in the other mere waste paper. If, then, the court below exercised a power not conferred by the organic act or the laws of this territory, and not inherent in the court, the judgment is void, and may be taken advantage of anywhere or before any court. It is a principle as old as the law itself, that consent can not confer jurisdiction; and if the court proceeded to try the case and render the decree in an action over which it had no control, the jurisdiction of which rightfully belonged to another court, the answer of the defendant could not confer such jurisdiction, and the judgment is void.

That such is the case we think we have abundantly shown by the fact that actions of *divorce do not necessarily* belong to courts of chancery or common-law jurisdiction, that they may be provided for by statute; and the judicial power of the territory residing in part with the probate courts, the legislature had the right which they have exercised to give them the exclusive control over these actions.

The decree of the court below is reversed and set aside.

CROSBY, J., concurred.