BAL*K*UM *vs.* OWENS ET AL.

[BILL IN EQUITY TO ENFORCE VENDOR'S LIEN.]

1. M. sold a tract of land to F., which was incumbered by a mortgage executed by M. to O. prior to the date ; but it was agreed between F. M. and O. that M. might sell the land to F. if F. would give his notes to O. for the amount of M.'s mortgage debt, and al-o give a mortgage to O. on the same land to secure this debt, and that this second mortgage should be preferred to the vendor's lien in favor of M. for his part of the purchase-money to be paid by F. above the debt to O. The sale was concluded by a deed from M. to F. and a mortgage by F. to O., as agreed upon, all of the same date. F. gave his notes to M. for the balance of the purchase-money above the amount of O.'s mortgage. One of these notes was afterwards transferred by M. to B., who filed his bill against F. M. and O. to enforce his vendor's lien arising on the note held by him,—*Held,* that the lien of O.'s mortgage was to be preferred to the vendor's lien in favor of B., and upon a sale of the land under decree of the court, O.'s mortgage debt must be first paid, and then the residue, if any, applied to the discharge of B.'s debt.

APPEAL from Chancery Court of Henry.

HEARD before Hon. ADAM C. FELDER.

The opinion states the case.

J. A. CORBITT, for appellant.

F. M. WOOD, *contra.*

PETERS, J.—This is a bill in chancery filed by the appellent, Balkum, as complainant, against Owens and others, for the purpose of enforcing a vendor's lien in favor of the said complainant against certain lands named and described in the bill.

The material facts shown by the bill are these : On the 7th day of January, 1867, Matthews, one of the defendants in the court below, sold to Freeman, his co-defendant, the lands mentioned in the bill for the sum of five thousand dollars. But at the time of this sale, said Owens had a

mortgage executed by Matthews to him on said lands, to secure a debt of $3,326.22, which Matthews owed him as a balance of the purchase-money for said land at a former sale. Before the negotiations of the sale by Matthews to Freeman were completed, it was required by Matthews that the mortgage debt to, Owens should be paid or secured. Owens was advised of this agreement, and consented to take from Freeman his notes for the sum due him on his mortgage, and a new mortgage from Freeman to secure the same ; but it was also agreed between the parties that this latter mortgage should be preferred to the vendor's lien that might result from the sale in favor of Matthews on the notes for the purchase-money, above the debt due to Owens, which were made payable to him. Upon this agreement, Matthews executed his deed to Freeman, and Freeman at the same time executed his mortgage to Owens to secure the amount of Owens' debt. Freeman also executed his promissory notes to Owens for the debt secured in the mortgage, and other notes to Matthews for the balance of the $5,000 purchase-money which remained after deducting the debt due to Owens. This was all done on the same day and at the same time the deed was made to Freeman and Matthews. Among the notes thus made payable to Matthews, was one for $836.89, which became due on the 1st day of January, 1868. This note was transferred by Matthews to Balkum. It does not appear that the first mortgage held on the lands in controversy by Owens was returned or discharged, though Matthews says that Owens took Freeman's notes and mortgage in lieu of the notes and mortgage given by him. The note transferred to Balkum was not paid. Nor were the notes given to Owens paid, or to Matthews. On this Balkum filed his bill to enforce his lien on the note held by him. And Owens, Freeman and Matthews were made defendants. Owens set up his superior and prior lien under his mortgage, and denied Balkum's lien. Balkum took no depositions in support of his case, but stood upon his bill and the exhibit thereto, which was his note, made payable to Matthews. In his answer, Owens set up his mortgage and

the agreement that it was to be preferred to the vendor's lien.  The proofs fully sustain Owens' answer.  On this the learned chancellor decreed a sale of the lands, but directed that after payment of the costs, Owens' mortgage should be first discharged, and then the residue, if any, should be applied in discharge of Balkum's note.  From this decree Balkum appeals, and here insists upon his right of preference over the mortgage to Owens.

No brief of authorities has been furnished by appellant to this court, and none are suggested by the facts set out in the record in support of his pretension.  And it does not appear that Balkum occupies a better condition as the holder of the note for that part of the purchase-money which he claims as the transferree of Matthews, than Matthews did himself.  The latter could only transfer such right as he possessed.  Balkum simply stepped into his shoes.  In doing this, he took a second place to Owen, and his lien is to be postponed to the prior right resulting from the mortgage, and the agreement on which it was made. This was in conformity both with the proofs in the case and the principles of law that must govern them.  Besides, Matthews swears, in his deposition, that the note held by Balkum was not intended to be secured by a vendor's lien. And he was the party to whom it was given.  Then its transfer could not give it a virtue it did not and was not intended to possess.  *Nemo plus juris ad alienum transferre potest, quam ipse habet.*—2 Kent, 324 ; Coke Litt. 309, *b* ; 10 Pet. 161, 175 ; 1 Wood. Lect. Introd. Let. 5.  This is the rule of law, when the statute of frauds does not intervene ; and it does not here.

The decree of the court below is in all things affirmed, and the said James W. Balkum, the appellant, will pay the costs of this appeal in this court and in the court below.