THOMAS v. PROVIDENT LIFE & TRUST CO. et al.

WICKHAM v. SAME.

(Circuit Court of Appeals, Ninth Circuit. May 22, 1905.)

No. 1,094.

1. EXECUTORS—MORTGAGES—POWERS—REPAYMENT OF INDEBTEDNESS.

Where executors applied the proceeds of a loan raised by a mortgage of real estate belonging to the testator to pay debts of the estate, the estate was bound, in equity, to repay the amount advanced, with interest, though the executors were not authorized by the terms of the will to execute the mortgage.

2. SAME—OBJECTIONS—PARTIES.

Where property charged with the payment of a legacy was sold, and the proceeds paid to the legatee in partial discharge of the legacy, neither she nor a judgment creditor of residuary devisees named in the will was entitled, in the absence of fraud on the part of the executors, to object to the validity of a mortgage executed by them on land belonging to the estate without express authority in the will; all of the proceeds of such mortgage having been applied to pay debts of the estate.

Ross, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Western Division of the District of Washington.

Charles S. Fogg and Frederick S. Fogg, for appellant Thomas.

Louis D. Campbell and Theodore D. Powell, for appellant Lucy L. Wickham.

John C. Stallcup and John A. Parker, for appellee Provident Life & Trust Co.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. As the facts of this case are fully stated in the dissenting opinion of Judge ROSS, they need not here be detailed.

The mortgages made to the Provident Life & Trust Company are in effect the mortgages of the executors. The trial court reached the conclusion that the executors and trustees under the will of Gen. Sprague had the power to mortgage the real property of the estate. While it is true that the very decided weight of authority sustains the proposition that a naked power given to executors to sell does not include the power to mortgage, there is authority for holding that where the purpose of the testator can better be answered by mortgaging than by selling, and such a course is not violative of that intention or of the terms of the will, the power to sell may include the power to mortgage. Mills v. Banks, 3 P. W. 1; Ball v. Harris, 4 M. & Cr. 264; Loebenthal v. Raleigh, 36 N. J. Eq. 169; Starr v. Moulton, 97 Ill. 525. The will gave the executors full power to manage the estate and sell it, either at public or private sale, on terms which accorded with their best judgment and discretion, without the supervision or control of any court, and without requiring the purchaser to see to the proper application of the proceeds. It contained the following general provision: "In all other respects I will and direct my executors and trustees to settle my estate in such manner as to them shall seem best." The

evidence indicates that a sale of the property immediately succeeding the death of the testator would have resulted in its sacrifice. But even if the mortgage were not authorized by the terms of the will, the estate, having received the benefit of the money, ought, in equity, to repay it, with interest. Said the Supreme Court of Iowa in such a case: "The estate has received the benefit of the money which was advanced by the defendant. It ought, in good conscience, to repay it, with legal interest." Deery v. Hamilton, 41 Iowa, 16.

The trust company undoubtedly loaned its money in good faith. It could have had no object or purpose in doing otherwise. The borrowed money was used by the executors in discharging legal incumbrances on the estate, and in paying the debts of the estate. Afterwards, in consideration of their obligation to repay the money so advanced, the executors executed a quitclaim deed to the trust company. Who of the parties to this record was in a position to attack that conveyance? It is unnecessary to say that the executors themselves were in no such position. Nor was Mrs. Cox. She was no creditor of the estate. At the time of the execution of the quitclaim deed it is true that she had a judgment lien against any real property standing in the name of Otis or Charles Sprague. But she had no lien on their interest in the estate. There was no fraud, therefore, in their act of transferring the real estate to the trust company in discharge of the debt owing to it. No property of Charles or Otis Sprague was thereby covered up. No resulting trust was created for their benefit. The bill of Mrs. Cox is purely a creditors' bill, seeking to discover property wherewith to satisfy her judgment. On what theory can she demand that the conveyance to the trust company be set aside? The trust company got no more than the satisfaction of its claim. That is made apparent by the failure of the executors to redeem. Their failure resulted from their inability to find during the period of three years a purchaser to take the property at a price in advance of that at which it was taken over by the trust company. But if the property had been of much greater value than the debt then owing the trust company, that fact would furnish Mrs. Cox no ground to impeach the conveyance. She had no remedy against an improvident sale by the executors. The will left them free to sell according to their judgment. The most that she could say would be that they mismanaged the estate, and thereby failed to realize any benefit from the will, either for themselves or for their individual creditors. She could only attack the conveyance on the ground of actual fraud participated in by the trust company, and the evidence shows no such fraud. In permitting her assignee to redeem the property from that conveyance, the trial court went as far in her relief as the principles of equity permitted it to go.

Mrs. Wickham was in no better position than Mrs. Cox. A specific portion of the real estate was charged with the payment of her legacy, and all the remainder was expressly relieved therefrom. The property charged with the burden of her legacy was sold, and she received the proceeds. The remainder of her legacy was not.

paid, for the reason that there were no funds wherewith to pay it. The debts of the estate were a first charge on the estate. The whole property went to pay those debts. Of the $55,000 first borrowed from the trust company, on which interest was made payable at 7 per cent., $40,000 was used to pay the principal of the prior mortgage which incumbered the business block, and was drawing interest at 8 per cent. per annum; $15,000 was used to pay the debt due the widow, and on which was a fixed charge of $200 per month until paid. Of the $30,000 subsequently borrowed, the evidence is convincing that all of it was used for the benefit of the estate. Said the trial court, "Every dollar of it was applied and used for the benefit of the estate." It is contended by the appellant that the evidence does not account for more than $13,602.49, and does not positively and satisfactorily account for more than $6,300, of the $30,000 so borrowed. Otis Sprague testified, however, that it was used in paying taxes, insurance, street improvements, and notes of the estate in the bank. "We left some small amount on hand to dispose of afterwards, but it was all used in the interest of the estate." Longstreth testified that it was paid out for taxes, street assessments, and interest on the first mortgage. It was objected that the trust company failed to produce vouchers to show the disbursement of the $30,000 in the manner indicated by this evidence, but it was shown that the vouchers had been lost, and a detailed statement of the account of the disbursements was produced under the oath of one of the executors, and was filed, showing that for taxes, insurance, and interest becoming due and payable in the years 1894, 1895, and 1896, the executors had paid in the aggregate more than $32,000. The dates of these payments, it is true, are not shown, but the fact that the $30,000 was not borrowed until September 9, 1895, does not contradict the testimony that the items so mentioned were paid out of this particular fund. The taxes, for instance, were overdue when paid, and there was evidence that money had been borrowed upon notes of the executors for other items of that account. The trust company had nothing to do with these disbursements, and had not the custody of the vouchers. It bought the property and paid for it. It was not required to see to the application of the purchase money, and it is under no obligation now to pay the balance due on Mrs. Wickham's legacy. If she has a remedy, it is against the executors.

We find no error for which the decree of the Circuit Court should be reversed. It is accordingly affirmed.

ROSS, Circuit Judge (dissenting). I dissent. This suit was commenced in one of the courts of the state of Washington by a judgment creditor of certain of the residuary devisees named in the will of the late Gen. John W. Sprague, and was, on motion of the defendant company, transferred to the United States Circuit Court for the District of Washington, where the bill was amended. The original complainant having died, and having, previous to her death, assigned all of her interest to the appellant Jesse Thomas, the suit was revived in his name. In the Circuit Court a cross-bill

was filed, by leave of the court, by the appellant Lucy L. Wickham, and upon issues raised by answers to those pleadings the cause was tried and decided by the court below.

The case shows that Gen. Sprague died in the city of Tacoma, state of Washington, on the 24th day of December, 1893, leaving what is designated by section 955 of 2 Hill's Ann. St. Codes Wash. a "nonintervention will"; that section being as follows:

"Sec. 955. In all cases where it is provided in the last will and testament of the deceased that the estate shall be settled in a manner provided in such last will and testament, and that letters testamentary or of administration shall not be required, it shall not be necessary to take out letters testamentary or of administration, except to admit to probate such will in the manner required by existing laws; and after the probate of such will, all such estates may be managed and settled without the intervention of the court, if the said last will and testament so provides: provided, however, in all such cases, if the party named in such will as executor shall decline to execute the trust, or shall die, or be otherwise disabled from any cause from acting as such executor, then letters testamentary or of administration shall issue as in other cases: and provided further, if the party named in the will shall fail to execute the trust faithfully and to take care and promote the interests of all parties taking under the will, then, upon petition of any creditor of such estate, or of any of the heirs, or of any person on behalf of any minor heirs, it shall be the duty of the superior court of the county wherein such estate is situated to cite such person having the management of such estate to appear before such court, and if, upon hearing of such petition, it shall appear that the trust in such will is not faithfully discharged, and that the parties interested, or any of them, have been or are about to be damaged by such acts or doings of the executor, then letters testamentary or of administration shall be had and required in such cases, and all other matters and proceedings shall be had and required as are now required in the administration of estates, and in such cases the costs of the citation and hearing shall be charged against the party failing and neglecting to execute the trust as required in such will."

The deceased left surviving him a wife, four sons, and one daughter, and a considerable estate, consisting chiefly of a residence and an improved block of business property in Tacoma known as the "Sprague Block," a diagram of which is here inserted:

The deceased also left a last will and testament, and a codicil thereto, which will and codicil were duly admitted to probate by the proper probate court. Those provisions of the will and codicil important to be considered in the present case are as follows:

"First. I give and bequeath to my sister, Lucy M. Skinner, widow of Holly Skinner, now of Berlin Heights, Ohio, the sum of one thousand dollars. In

the event my said sister shall die before my decease leaving no lineal descendants her surviving, then I do give and bequeath said sum of one thousand dollars to the heirs at law of my said sister.

"Second. I give and bequeath to my daughter, Lucy L. Wickham, wife of John W. Wickham, Jr., of Huron, Ohio, the sum of Thirty Thousand Dollars, payable in three installments as follows: Ten thousand dollars three years after the date of my decease, ten thousand dollars four years after the date of my decease, and ten thousand dollars five years after the date of my decease, with interest on each of said deferred payments, at the rate of six per cent. per annum from the date of my decease until paid, and I expressly charge the payment of said legacy upon the following described real estate situate in the City of Tacoma, County of Pierce, and State of Washington, and more particularly described as follows: Beginning at a point on the easterly line of Pacific Avenue, formed by the intersection of said easterly line of Pacific Avenue with the westerly line of Hood Street; running thence northerly along the easterly line of Pacific Avenue one hundred feet; thence easterly on a line drawn at right angles to the easterly line of Pacific Avenue, to its point of intersection with the westerly line of Hood Street, and thence southerly along the westerly line of Hood Street to the point of beginning; and I do expressly release and discharge all the remainder of my real estate from the lien of said legacy. * * *"

"Fourth. Whereas, on or about the 11th day of October, eighteen hundred ninety, and preceding my marriage with my present wife, I entered into a certain agreement with her in words and figures following:

"'Memorandum of an agreement made and concluded this eleventh day of October, 1890, between John W. Sprague of Tacoma, Washington, of the first part, and Abby W. Vance, of Meadeville, Pennsylvania, of the second part.

"'Whereas, the parties to this agreement intend to marry, and wish now to settle the claim that the survivor might or could have in the estate of the other, by virtue of statute or otherwise: It is agreed for and in consideration of one dollar and other valuable considerations passing from one to the other, that should first party survive second party, he is to have no right, title or claim in or to the estate, real, personal or mixed property of second party, and this agreement is a release or satisfaction of any right or claim in the estate, real, personal or mixed property of second party that she may die possessed of. That should second party survive first party, second party to receive out of estate of first party the sum of fifteen thousand dollars to be paid to second party by the executors of first party's last will and testament, out of his estate, in one year after his decease, and in addition thereto the sum of two hundred dollars a month, until said sum of fifteen thousand dollars is paid. On the payment of said sum of fifteen thousand dollars and monthly payments this agreement is a release and satisfaction of any further right or claim said second party might or could have in the estate, real, personal, or mixed property of first party, that he may die possessed of.

"'Witness our hands and seals this the day and year above written

"'[Signed]                               John W. Sprague.    [Seal.]
                                         "'Abby W. Sprague.    [Seal.]

"'In presence of:
     "'W. Fraser.
     "'Louis D. Campbell.
     "'T. B. Wallace.
     "'Theo. D. Powell.
     "'J. N. McClosky.
     "'Hiram S. Richmond.'

"[Certificate of acknowledgment by notary public here omitted.]

"Now, therefore, I hereby ratify and confirm said agreement and I do also give, devise and bequeath to my wife, Abby W. Sprague, for and during such period of her natural life as she shall continue to occupy the same as a home, all those certain parcels of land and the improvements thereon erected and being situate in the city of Tacoma, county of Pierce and state of Washington, and more particularly described as follows: Lots number

seven, eight, nine, ten, eleven and twelve in block number two hundred twelve. as known and designated on a certain map, entitled 'The Tacoma Land Company's Third Addition to Tacoma, W. T.,' which map was filed for record in the office of the auditor of the said Pierce County on the twenty-first day of July, eighteen hundred eighty-five, free from all taxes and assessments, ordinary and extraordinary, levied or assessed thereon during said time, which taxes and assessments and the insurance premiums against fire on said premises I charge to my personal estate, and from and after her decease I give, devise and bequeath said premises to my sons Otis Sprague, Winthrop Wright Sprague, Clark Woodard Sprague and Charles Sprague as tenants in common, to be equally divided between them, share and share alike, and to their heirs and assigns forever; and in the event my said wife shall cease to occupy said premises as a home, then from and after the time she shall so cease to occupy said premises I give, devise and bequeath said premises to my sons Otis Sprague, Winthrop Wright Sprague, Clark Woodard Sprague and Charles Sprague, as tenants in common, to be equally divided between them, share and share alike, and to their heirs and assigns forever; and, in the event of my son Otis, Winthrop Wright, Clark Woodard or Charles Sprague shall die before the termination of the estate in said premises devised to my wife, leaving no lawful issue him or them surviving, then I do will and direct that the share or portion of said premises hereinabove devised and bequeathed to him or them shall be divided equally, share and share alike, among such of my five children, Otis, Winthrop Wright, Clark Woodard, Charles Sprague and Lucy L. Wickham, who shall then survive, and the lawful issue then surviving of any of said five children Otis, Winthrop Wright, Clark Woodard, Charles Sprague and Lucy L. Wickham, then deceased, such issue taking by representation. I do also give and bequeath to my said wife all the household and kitchen furniture of every description [here follows an enumeration of various articles of personal property not necessary to be mentioned]; and in the event my executors and trustees hereinafter named shall not deem it to the best interest of my estate to pay said sum of fifteen thousand dollars when it falls due, and my wife, Abby W. Sprague, shall consent to defer the payment thereof, then I do give and bequeath to my said wife, Abby W. Sprague, in lieu of interest on said sum of fifteen thousand dollars, the sum of two hundred dollars per month, payable monthly, from the date beginning one year after my decease and ending when my said executors and trustees shall pay my said wife the said sum of fifteen thousand dollars. And I do expressly charge the payment of the said sum of fifteen thousand dollars upon the real estate described in this paragraph of my will and in which I have devised to my wife, Abby W. Sprague, an estate during such portion of her life as she shall occupy the same as a home, and I do expressly release and discharge all the remainder of my real estate from the lien of said sum of fifteen thousand dollars.

"Fifth. All the rest, residue, and remainder of my estate, real, personal and mixed of every nature and description whatsoever and wherever situate of which I shall be seised, possessed or entitled to, or have any estate or interest in, at the time of my decease, I give, devise and bequeath to my four sons, Otis Sprague, Winthrop Wright Sprague, Clark Woodard Sprague, and Charles Sprague, as tenants in common, to be equally divided between them, share and share alike, and to their heirs and assigns forever.

"Sixth. In the event of my son Otis, Winthrop Wright, Clark Woodard, or Charles Sprague shall die before my decease, leaving no lawful issue him or them surviving, then I do will and direct that the share or portion of my estate herein devised and bequeathed to him or them shall be divided equally, share and share alike, among such of my five children, Otis, Winthrop Wright, Clark Woodard, and Charles Sprague, and Lucy L. Wickham, who shall then survive, and the lawful issue so surviving of any of said five children then deceased, such issue taking by representation.

"Seventh. I give, devise, and bequeath to my said executors and trustees full power and authority to sell any or all of my real or personal property, except such personal property as is hereinbefore specifically bequeathed

138 F.—23

and excepting the parcel of real estate hereinbefore expressly charged with the payment of the legacy to my daughter, Lucy L. Wickham, and excepting the parcel of real estate expressly charged with the money due my wife, Abby W. Sprague, under the marriage agreement hereinbefore referred to, with or without notice, and upon such terms, either for credit or cash, as my said executors and trustees shall deem best, and free and discharged of any and all liens, expressed or implied, created by this will, and I expressly will that the receipt for the purchase money of my executors and trustees, or the survivor of them, shall be a sufficient discharge of the purchase money, and that it shall not be necessary to obtain a confirmation by any officer or court of any sale or sales made as aforesaid by my executors and trustees or the survivor of them in order to vest in their or his grantee the fee simple of said real estate.

"Eighth. I will and expressly direct that no bonds or obligations, of any nature whatsoever shall be required of any of the persons hereinafter named by me as executors or as trustees or as guardians of the estate of infant legatees, and that my executors shall not return an inventory of my estate to the probate or to any court.

"Ninth. I will and expressly direct that my estate shall be settled in the manner herein provided and that none of my executors or trustees shall be required to take out letters testamentary except to admit to probate this my last will in the manner required by existing laws and that after the probate thereof my estate shall be settled without the intervention of the superior or any court or officer in any manner whatsoever. I further will and expressly direct that none of the persons named by me as guardians of the estate of infant legatees shall be required to take out letters of guardianship.

"Tenth. I will and direct my executors and trustees as soon as they conveniently can, and within six months after the date of my decease, to make an appraisement and inventory of my estate for their guidance in the management of the same, said inventory to be retained in their custody for their own use and to be always open to the inspection of the legatees and devisees under this my last will.

"Eleventh. I further will and direct my executors and trustees within two month[s] after this my last will shall be admitted to probate to cause to be published in some newspaper printed in the county of Pierce, at last [least] once a week for four successive weeks, a notice to my creditors requiring all persons having claims against my said estate to present them with the necessary vouchers within one year from the date of such notice to my executors at their place of residence or place of transacting business to be specified in said notice.

"Twelfth. I will and direct my said executors and trustees to pay the legacy herein made by me to Lucy M. Skinner as soon as may be found convenient after my decease. In all other respects I will and direct my executors and trustees to settle my estate in such manner as to them shall seem best. * * *"

"Fourteenth. I hereby nominate, constitute and appoint my son Otis Sprague and my friend James R. Hayden, executors and trustees of this my last will and testament and guardians of the estate of infant legatees hereunder.

"In the event of the death of either of them or their incapacity or refusal to act, then I nominate and appoint Winthrop Wright Sprague executor and trustee hereof and guardian of the estate of infant legatees hereunder to act with the other or survivor. In the event of the death of either of them or their incapacity or refusal to act, then I nominate and appoint Clark Woodard Sprague executor and trustee hereof and guardian of the estate of infant legatees hereunder to act with the other or survivor. In the event of the death of either of them or their incapacity or refusal to act, then I nominate and appoint Charles Sprague executor and trustee hereof, and guardian of the estate of infant legatees hereof to act with the other or survivor.

"In the event of the death of either of them, or their incapacity or refusal to act, then the other or survivor to be sole executor and trustee thereof and guardian of the estate of infant legatees hereunder."

At the time of the death of the testator there was an existing mortgage to secure the payment of the sum of $40,000 on the Sprague Block, in favor of the German Savings & Loan Society of San Francisco. That mortgage covered the entire block. The hypothenuse of the triangle of the block, marked "A" on the diagram, is the piece upon which the legacy to Mrs. Wickham was by the will made a charge. In August, 1894, Otis Sprague applied to the Provident Life & Trust Company, appellee here, for a loan to the executors and trustees of $55,000, offering as security therefor a mortgage by them upon that portion of the Sprague Block marked upon the diagram "Parcel No. 2." The application to the trust company was made through its resident agent at Tacoma, Mr. Henry Longstreth, who examined the property, was satisfied with the security, and replied that the loan would be made if the title should prove satisfactory, which question of title was submitted to the appellee's attorney at Tacoma, Mr. D. K. Stevens. The latter, after examination, reported that under the will the executors and trustees had no authority to borrow money or to mortgage the property of the estate, and the loan was refused for that reason. Subsequently Stevens suggested to Otis Sprague that, as the executors and trustees had power to sell, but not to mortgage, they could get around that provision of the will by conveying the property to Charles Sprague, one of the residuary legatees, who could thereupon borrow the money, executing a mortgage upon the property to secure its repayment, and then reconveying the property to the executors and trustees. Thereupon, to wit, August 28, 1894, the executors and trustees executed to Charles Sprague a deed covering parcel No. 2 of the Sprague Block, expressing a consideration of $120,000, which deed was recorded in the proper records at the request of the appellee on the 28th day of August, 1894, on which day it loaned to Charles Sprague $55,000, taking at the same time as security therefor a mortgage from him covering the said Parcel No. 2. On the same day—August 28, 1894—Charles Sprague executed to the executors and trustees his note for $65,000, payable on or before five years after date, and as security therefor a second mortgage covering parcel No. 2 of the Sprague Block. A few weeks later Charles Sprague executed to the executors and trustees a deed expressing a consideration of $120,000, and covering the same premises. All of these papers were witnessed by Mr. Stevens, who, as notary public, also took the acknowledgments thereof. In September, 1895, the executors and trustees applied to the appellee for a further loan of $30,000 upon parcel No. 1 of the Sprague Block, when substantially the same performance was gone through, except that in that instance there was no note given by Charles Sprague to the executors and trustees, and no second mortgage executed by him to them. On September 5, 1895, a deed was executed by the executors and trustees to Charles Sprague, expressing a consideration of $90,000, and covering parcel No. 1 of the Sprague Block, and thereupon the appellee loaned to Charles Sprague $30,-000, taking as security therefor a mortgage from him covering the said parcel No. 1. In February, 1896, Charles Sprague executed to

the executors and trustees a deed expressing a consideration of $90,000, and covering parcel No. 1 of the Sprague Block.

Charles Sprague never paid anything for any of those purported conveyances, and the evidence in the cause makes it perfectly plain that it never was intended by any of the parties to the transactions that he should. He never entered into possession of any of the property, nor exercised any act of ownership over any part of it; but, on the contrary, the executors remained in possession, and continued to collect the rents and issues thereof, of all of which the appellee, through its agent, had full knowledge. In truth, the method pursued by the parties was a scheme devised to accomplish indirectly what they considered the provisions of the will prohibited; and the court below so found the fact to be, although it was there held that there was no fraud in the transactions, and that they were valid in law.

The evidence shows that the $55,000 loaned by the appellee to Charles Sprague was not turned over to him, but went directly to the executors and trustees, and was used by them in paying and discharging the $40,000 mortgage upon the Sprague Block theretofore held by the German Savings & Loan Society of San Francisco, and in paying to the widow of the testator the $15,000 bequeathed to her. The $30,000 loaned by the appellee to Charles Sprague was also turned over by the appellee to the executors and trustees, a small part of which, but only a part, is also shown by the evidence to have been used by them in paying taxes, assessment liens, and other obligations of the estate of the deceased.

In October, 1896, Mrs. Sidney Cox, the complainant in the original bill in the present suit, recovered a judgment in one of the courts of the state of Washington against Otis Sprague and Charles Sprague, two of the residuary devisees named in the will of Gen. Sprague, for $17,883.75, for money theretofore loaned to them, only a small part of which was or could be collected upon execution.

In April, 1897, the present appellee, the Provident Life & Trust Company, commenced two actions in the superior court of Pierce county, Wash., numbered respectively 16,084 and 16,085, to foreclose the $55,000 and $30,000 mortgages respectively executed to it by Charles Sprague; making defendants thereto the executors and trustees of the will in question, and also Charles, Otis, Winthrop Wright, and Clark W. Sprague, Lucy L. Wickham, and Mrs. Sidney Cox. In each of those actions a receiver was appointed to collect the rents, issues, and profits of the property involved pending the litigation. Lucy L. Wickham, the cross-complainant in the present suit, appeared separately in each of those foreclosure suits, and filed a separate answer and defense in each of them. Her answers were substantially the same, and set up the will of Gen. Sprague and her rights thereunder, and also set up, in substance, the proceedings already detailed respecting the loans made by the appellee in 1894 and 1895, and alleged that they were mere devices adopted to effectuate the loan of money to the executors, and to secure the repayment thereof by mortgage upon property of the estate, and that they were void; that at that time there were and

continued to be unpaid debts of the estate; that her legacy then remained wholly unpaid, together with such other interests as were devised to her; that on or about the 20th of June, 1896, she recovered a judgment in the superior court of Pierce county, Wash., against the executors of the estate in question, for the sum of $1,825, no part of which had been paid; that the personal property of the estate was insufficient to pay its debts, which were a proper charge upon its real estate; and the prayer of the answers of Mrs. Wickham was that the mortgages be decreed void and of no effect in so far as concerned her rights or interests. The Provident Life & Trust Company demurred to each of those answers on the ground that they did not state facts sufficient to constitute a defense or counterclaim, which demurrers were, after argument on behalf of the respective parties, overruled by the said court. Thereupon the following stipulation in writing, to which neither Mrs. Cox nor Mrs. Wickham was a party, was entered into:

"In the Superior Court of Pierce County, Washington.

"The Provident Life and Trust Co., Plaintiff, vs. Charles Sprague et al., Defendants. (No. 16,084.)

"The Provident Life and Trust Co., Plaintiff, vs. Charles Sprague et al., Defendants. (No. 16,085.)

"Stipulation.

"Whereas the above entitled actions brought by the above-named plaintiff against the above-named defendants for the foreclosure of two certain mortgages upon real property hereinafter described, are now pending in said court, upon the pleadings of the respective parties, and are set for trial in said court; and

"Whereas the parties to this stipulation, to wit, the Provident Life and Trust Company the plaintiff, and the defendants Charles Sprague, Otis Sprague, Winthrop Wright Sprague, and Clark Woodard Sprague, and Otis Sprague and James R. Hayden as executors of the last will and testament of John W. Sprague, deceased, are desirous of settling and determining the said actions without further litigation:

"Now, therefore, it is hereby stipulated by and between the said parties as follows, to wit:

"(1) The plaintiff shall dismiss said actions and cause the receiver, A. C. Smith, to account for and pay the net proceeds of said receivership to the stipulating defendants herein, who shall forthwith pay the same to the plaintiff.

"(2) The stipulating defendants herein shall at the earliest practicable date convey to the plaintiff by proper quitclaim deed the mortgaged premises described in plaintiff's complaints herein.

"(3) The plaintiff shall forthwith be entitled to the possession of the premises upon the discharge of said receiver, and shall be entitled to have and receive all unpaid rents due from the tenants of said premises or any part thereof.

"(4) Plaintiff shall keep an accurate account of its receipts from rents of said premises, and of its expenditures thereon or in connection therewith during the lifetime of this stipulation, and shall give to the stipulating defendants, or either of them, or their attorneys, reasonable opportunity, on request, to inspect said accounts.

"(5) Whenever, during the lifetime of this stipulation, the plaintiff shall be able to sell either of the parcels of real property hereinafter described for a sum sufficient to repay to it the full sum of one hundred and seven thousand, two hundred and fifteen and sixty-five one-hundredths dollars ($107,215.65), with interest thereon at the rate of seven per cent. per annum

from the date hereof, it shall be free to make sale notwithstanding this stipulation.

"(6) The plaintiff shall forthwith pay to the stipulating defendants the sum of $1,075.00.

"(7) Whenever within three years from the date of this stipulation, the stipulating defendants, Otis Sprague, Winthrop Wright Sprague, Charles Sprague, and Clark Woodard Sprague, or either of them, or either of their heirs or assigns, shall pay or cause to be paid to the plaintiff at its office in the city of Philadelphia, Penna., the said sum of one hundred and seven thousand, two hundred and fifteen and sixty-five one-hundredths dollars, with interest thereon at seven per cent. per annum from the date hereof, the plaintiff shall forthwith execute and deliver proper quitclaim deeds for the same,. with warranty against its own acts, to the said Otis, Clark Woodard, Charles, and Winthrop Wright Sprague, or to their heirs or assigns as the case may be. In making the above-mentioned payment to plaintiff, said defendants shall be entitled to have set off against the same sum to be paid and interest, any net rents or receipts or proceeds of, or insurance upon, said premises which said plaintiff may have received, over and above the cost of maintenance, improvements, repairs, taxes, and insurance and costs of any or all suits at law or in equity which the plaintiff ·may be advised to be necessary to assert the priority of the said mortgages or to clear the title to said premises, and five per cent. of the gross rents collected as fees for the collection thereof.

"(8) Whenever, as provided in the foregoing paragraph five (5) the plaintiff shall have sold one of the parcels, it shall forthwith execute a conveyance of the other parcel in the same manner as is provided to be done in the case of a repurchase in the last preceding paragraph.

"(9) The object of this stipulation is declared to be to settle the points in dispute between the parties hereto, in said causes, and to enable said defendants to repurchase said mortgaged premises for the sums above mentioned at any time within three years from the date hereof.

"(10) It is expressly agreed that in no case and under no circumstances shall the stipulating defendants or either of them, or their successors, heirs or assigns, set up or maintain that this stipulation is to be taken or considered as continuing said mortgages or either of them, so that their rights. under this stipulation can be terminated by foreclosure only; but this stipulation shall be construed only as an agreement on the part of the plaintiff to sell said premises at any time within said three years, and upon the expiration of said three years, this agreement to sell shall cease and determine without any act or declaration on the part of the plaintiff, and thereafter the title to said premises, both legal and equitable, shall be absolutely in the plaintiff and its right to sell and dispose of the same free of all claims. on the part of the stipulating defendants shall be unquestioned.

"(11) Notwithstanding the terms of this stipulation and of the deed to be executed by the stipulating defendants to the plaintiff, the plaintiff shall have the right to maintain and assert said mortgages as valid, existing, and unsatisfied mortgages against all other persons claiming any interest in or lien upon said mortgaged premises or any part thereof, and to maintain and defend any and all suits at law or in equity, which it may be advised to be necessary to assert the priority of said mortgages over any such claims, or to clear the title to said premises of the same.

"(12) Should said premises or either of them be redeemed from said mortgages by any person other than defendants, such person being a lawful redemptione., then plaintiff shall be relieved from the terms of this stipulation, as to the premises redeemed and the redemption money shall be credited to these defendants as a payment of the repurchase herein provided for.

"(13) Should the building on said premises be injured or destroyed by fire, the plaintiff may either credit the money received by it from insurance on the amount to be paid by said defendants for said repurchase or it may use the same in rebuilding.

"(14) The real property hereinbefore mentioned and intended to be effected is described as follows, to wit:

"First Parcel, Cause Number 16,084.

"Beginning at a point on the easterly line of Pacific avenue in the city of Tacoma, one hundred and six (106) feet southerly from a point formed by the intersection of the southerly boundary of South Fifteenth street, in said city of Tacoma, with the easterly boundary of said Pacific Avenue; running thence in a southerly direction along and on said easterly line of Pacific avenue, a distance of two hundred and forty-three and one hundred and fifty-eight one-thousandths ($243^{158}/_{1000}$) feet; running thence in an easterly direction on a line drawn at right angles with the easterly line of said Pacific avenue, a distance of fifty-three and eighty-three one-hundredths ($53^{83}/_{100}$) feet; to its point of intersection with the westerly line of Hood street in said city of Tacoma; running thence in a northeasterly direction along and on the westerly line of said Hood street, a distance of two hundred and seventy-five and five-tenths ($275^{5}/_{10}$) feet; running thence in a westerly direction on a line parallel with the southerly line of said South Fifteenth street, a distance of one hundred and eighty-four (184) feet to the point of beginning on said easterly line of Pacific Avenue.

"Second Parcel—Cause Number 16,085.

"Beginning at a point formed by the intersection of the southerly line of South Fifteenth street, with the easterly boundary of Pacific avenue, in the city of Tacoma; running thence in a southerly direction along and on said easterly line of said Pacific avenue, a distance of one hundred and six (106) feet; running thence in an easterly direction on a line drawn at right angles to the easterly line of said Pacific avenue a distance of one hundred and eighty-five (185) feet more or less to its point of intersection with the westerly line of Hood street in the city of Tacoma; running thence in a northeasterly direction along and on the westerly line of said Hood street, a distance of one hundred and nineteen (119) feet, more or less, to a point formed by the intersection of the southerly boundary of said South Fifteenth street with the westerly boundary of said Hood street; running thence in a westerly direction along and on the southerly line of said South Fifteenth street and at right angles to the easterly line of said Pacific avenue, a distance of two hundred and forty-one and one hundred and twenty-seven one-thousandths ($241^{127}/_{1000}$) feet, more or less, to the point of beginning.

"Dated at Tacoma, December 1, 1897.

"P. Tillinghast,
"Attorney for Plaintiff.
"T. L. Stiles,
"Attorney for defendants, Charles Sprague, Otis Sprague, Winthrop Wright Sprague, Clark Woodard Sprague, and Otis Sprague and James R. Hayden, executors, etc."

In pursuance of the stipulation the executors and trustees and the residuary devisees executed to the appellee a quitclaim deed covering parcel No. 1 and parcel No. 2 of the Sprague Block, which deed was accepted by the appellee in satisfaction of the mortgages to it, and of the indebtedness purported to be secured thereby.

The amended bill of Mrs. Cox, filed in the present suit against Otis Sprague, Mave H. Sprague, his wife, Charles Sprague, the Provident Life & Trust Company, a corporation, Winthrop Wright Sprague, Clark Woodard Sprague, Lucy L. Wickham, Winthrop Wright Sprague, and Clark Woodard Sprague, as the executors and trustees of the last will and testament of John W. Sprague, deceased, alleges, among other things, that on the 24th day of October, 1896, she recovered a judgment in the superior court of Pierce county, Wash., against Otis, Mave H., and Charles Sprague for the sum of $17,883.75, bearing interest at the rate of 7 per cent. per annum until paid, upon which judgment execution was issued and returned

partly unsatisfied, and that a balance of $16,500 remains due and unpaid thereon, and that no property belonging to her said judgment debtors, or either of them, can be found, upon which execution can be levied. The amended bill of Mrs. Cox then alleges, in substance, the matters already stated in respect to the death, will, and property of Gen. Sprague, and respecting the debts and mortgages in question. It alleges, upon the information and belief of the complainant, that the debts and claims against the estate of the deceased, other than the debts secured by the mortgage upon this real estate, did not exceed the sum of $5,000, and that the money and personal property belonging to the estate, and which came into the hands of the executors and trustees, were more than sufficient to discharge all of those debts, and that, as a matter of fact, they were paid. The amended bill alleges that the indebtedness and mortgages in satisfaction of which the quitclaim deed covering parcel No. 1 and parcel No. 2 of the Sprague Block was executed to and accepted by the appellee constituted the individual indebtedness of Charles Sprague, and that neither the testator nor the executors of his will was a party to that indebtedness or those mortgages, and that the latter never constituted any lien upon any of the property of the estate, and that the said quitclaim deed to the appellee was wholly without consideration, illegal, and void; that the pretended conveyances by the executors to Charles Sprague were wholly without consideration, simulated, and an attempted misappropriation by the executors and trustees of property of the trust estate; that the appellee, at the time it took the mortgages from Charles Sprague, and for a long time prior thereto, had full knowledge that the property covered by them constituted a part of the property of the deceased, and that his estate was in process of administration, and knew that the executors had no power to make any conveyance thereof to any one, except in consummation of an actual sale, made upon sufficient consideration, and knew that Charles Sprague paid nothing for either of the deeds to him, and that it was not intended that he should, and that both of the deeds were simulated conveyances, and made solely that Charles Sprague might mortgage the property covered thereby; that the pretended conveyances to Charles Sprague and the mortgages by him to the appellee were made at the instigation of Otis and Charles Sprague for the purpose of converting the assets of the estate into cash, and to avoid the distribution of the property to the beneficiaries of the estate, in order thereby to defeat the complainant's judgment.

The amended bill also set up the commencement of the two actions by the Provident Life & Trust Company in the superior court of the state of Washington, the only notice or knowledge of which, complainant alleged, was derived from a copy of the summons and complaint in each of the cases, which she received through the mails; that during their pendency, and until on or about May 1, 1899, the complainant was ignorant of, and did not discover, the manner of the execution of either of the mortgages for the foreclosure of which those suits were brought, and had no knowledge or information of any character concerning the facts and circumstances

surrounding and leading up to the execution of those mortgages; that at different times in the months of May, June, and August, 1897, Winthrop Wright, Clark Woodard, and Charles Sprague, and Lucy L. Wickham, also Otis Sprague and James R. Hayden as executors of the will of the deceased Sprague, made, verified, and filed, as the complainant has since discovered, separate, verified answers in each of the aforesaid foreclosure suits in the state court of Washington, setting forth the facts surrounding and leading up to the execution of each of the said mortgages as alleged in the amended bill, and alleging and showing the want of consideration therefor, and the want of power in the executors to mortgage the said real estate, and alleging the illegality of each of them. The amended bill then set up the demurrers of the trust company to the answers of Mrs. Wickham in the foreclosure suits in the state court, the ruling of that court thereon after argument and due consideration, and the subsequent making of the stipulation already set out. The amended bill also alleges that on or about November 29, 1898, Winthrop Wright Sprague was appointed executor and trustee of the will of the deceased Sprague in place of James R. Hayden, whose resignation as such had been presented to and accepted by the probate court of Pierce county, and that on or about February 14, 1899, Clark Woodard Sprague received a like appointment in place of Otis Sprague; that Winthrop Wright and Clark Woodard Sprague have ever since their respective appointments been the duly appointed and acting executors and trustees of the estate; that complainant, having in the early part of 1899 for the first time learned of the facts and circumstances alleged, presented to the probate court of Pierce county, Wash., on the 16th day of May of that year, a petition setting up the alleged sham and fraudulent proceedings and misappropriation of the property of the estate, and praying that court to require the executors to render a full and true inventory of all of the assets and all of the liabilities of the estate, together with a full and true account of their acts as such executors; that the said probate court held, after hearing and due consideration, that under the provisions of the will in question, and the above-quoted provisions of the statute of the state of Washington, the court was without jurisdiction in the premises, and accordingly dismissed the petition; that thereupon the complainant applied to the Supreme Court of the state for a writ of mandate commanding the said superior court and the judge thereof to hear the said petition, and to grant whatever relief, if any, the petitioner might show herself entitled to, which application was, after argument, denied by the Supreme Court of the state in a written opinion sustaining the action of the said probate court, and the ground upon which it was based. The amended bill further alleged that neither of the complainant's said judgment debtors has any property out of which her judgment can be satisfied, except their interests in the property of the deceased Sprague; that the executors and trustees have failed and refused to bring suit or to take any steps to recover the property of the estate; and that the complainant, having no remedy in probate or at law, will be entirely de-

feated and defrauded of her rights unless assisted by a court of equity.

The prayer of the bill is for a decree adjudging the deeds and mortgages complained of void; restoring the property described in the aforesaid quitclaim deed to the appellee to the estate in question; adjudging it free and clear of any lien on the part of the appellee; requiring the latter to account for the rents collected by it from the property; commanding the executors and trustees of the estate to bring their administration thereof to a close; to distribute the property to those entitled to it; and adjudging that the shares and interests of Otis and Charles Sprague therein, or so much thereof as may be necessary to satisfy the complainant's judgment, be sold at public sale to satisfy the same; and for such other and further or different relief as to the court may seem just and equitable.

Mrs. Wickham was made a party defendant to the bill of Mrs. Cox, and appeared and answered the bill. And as she contends that the residuary devisees take no interest in the estate until her legacy is paid and satisfied in full, and also contends that the mortgages to the appellee were void and of no effect, she filed a cross-bill in the cause, making defendants thereto the complainant and the defendants to the bill. In her cross-bill Mrs. Wickham alleges that her legacy has not been paid, and that the deeds from the executors and trustees to Charles Sprague, the mortgages by the latter to the appellee, the reconveyance by Charles Sprague to the executors and trustees, the foreclosure proceedings instituted by the appellee in the state court of Washington, the stipulation entered into therein, and the quitclaim deed made pursuant thereto, were each and all void and in fraud of her rights; and her prayer is that they be so adjudged, and that the property covered by them be decreed to be still a part of the estate of the deceased, and be restored to the executors and trustees thereof; that the trust company be required to account to them for the rents collected by it, and that the executors and trustees be required to sell the property and pay the cross-complainant the amount due on her legacy; and, as alternative relief, the cross-bill prays that she be allowed to redeem the property; that it be adjudged that she is entitled to be paid the amounts due on her legacy before any of the defendants to the cross-bill are entitled to receive anything; and for general relief.

None of the residuary devisees answered the cross-bill of Mrs. Wickham, and a decree pro confesso was taken as to them. Mrs. Cox answered, and admitted the truth of the allegations thereof concerning the deeds, mortgages, and proceedings assailed in her bill. The appellee answered both the amended bill and the cross-bill, and in each of its answers put in issue the allegations respecting the fictitious and fraudulent character of the deeds, mortgages, and other proceedings assailed in the bill and cross-bill, denied any notice on its part of a lack of consideration for any of those instruments, or that either of them was made for any other purpose than indicated on its face, and specifically set up that in the month of August, 1895, Otis Sprague applied to the appellee for a loan of $55,000, to be secured by a mortgage to be made by the executors

and trustees of the estate upon parcel No. 2 of the Sprague Block, but that the appellee then and at all times refused to make any loan of money to the executors, or to take as security therefor a mortgage upon any part of the property of the estate; that thereafter Otis Sprague informed the appellee that the executors and trustees were about to sell or had sold said parcel No. 2 of the Sprague Block to Charles Sprague, and that Charles Sprague desired to make a loan from the appellee of $55,000, to be secured by his promissory note and mortgage upon the said parcel No. 2; that the appellee then informed Otis Sprague that it could not loan any money upon security of that character unless the sale thereof to Charles Sprague was an absolute and bona fide sale, and an absolute transfer of a fee-simple title to him; that the appellee was then informed by Otis Sprague and Charles Sprague that the sale of that parcel of land to Charles Sprague was an absolute and bona fide sale and transfer of the title in fee to Charles Sprague for a consideration paid to the executors and trustees by Charles Sprague of $120,000, and that Charles Sprague would pay to the executors and trustees the amount of the proposed loan as a part of the consideration for that sale; that the appellee believed and relied upon such representations so made to it, and would not have loaned any money upon the security of the mortgage from Charles Sprague, had it not been so informed and believed; that on or about August 20, 1894, the executors and trustees, under and by virtue of the powers vested in them by the terms of the will of the deceased Sprague, and for a consideration of $120,000 paid to them by Charles Sprague, sold and by their deed conveyed to Charles Sprague parcel No. 2 of the Sprague Block; that said deed was executed and acknowledged by Otis Sprague and James R. Hayden, executors and trustees, and by Otis Sprague, Winthrop Wright Sprague, and Clark Woodard Sprague as grantors therein; that the appellee, believing that such deed was made in good faith and in all respects pursuant to the powers given to the executors and trustees by the terms of the will of the deceased, Sprague, and without any knowledge, information, or notice of any violation of or deviation from their powers and duties as such executors and trustees, and believing that the deed conveyed to and vested in Charles Sprague an absolute fee, free and clear of all incumbrances, to the premises therein described, and relying on the recitals in and the record of said deed, loaned and paid to Charles Sprague $55,000 in gold coin, and, to secure the repayment thereof, took from him his promissory note and his mortgage upon the said premises; that thereafter and on or about the 5th day of September, 1895, Otis Sprague and James R. Hayden, as executors and trustees of the will of the deceased, Sprague, and for a consideration of $90,000 paid to them by Charles Sprague, sold and by their warranty deed conveyed parcel No. 1 of the Sprague Block to Charles Sprague; that thereafter, and on September 7, 1895, believing and relying upon the representations made to it by Charles Sprague and by the said executors and trustees that the said deed to Charles Sprague was made in good faith, and in all respects pursuant to and in accordance with the powers given to the

executors and trustees by the terms of the will in question, and without any knowledge or notice of any variation from or violation of their powers or duties as such executors and trustees, and believing that said last-mentioned deed conveyed to and vested in said Charles Sprague an absolute title in fee simple, free and clear of all incumbrances, to the said parcel No. 1, therein described, and relying upon the recitals in and the record of the said deed, the appellee loaned and paid to Charles Sprague the sum of $30,000 in gold coin, and, to secure the repayment thereof, took from him his promissory note and his mortgage upon said parcel No. 1 to secure the same; that each of the loans so made by the appellee to Charles Sprague was paid over by him to the executors and trustees as a part of the purchase price of the property, and was wholly used and applied by them for the benefit, use, and preservation of the estate of the deceased Sprague.

The answers of the appellee also alleged that at the times of the execution of the deeds by the executors and trustees to Charles Sprague covering parcel No. 1 and parcel No. 2 of the Sprague Block, and of the execution of the two mortgages thereon by Charles Sprague to the appellee, all of the heirs, devisees, legatees, and creditors of the estate of the deceased Sprague, and all other persons having any interest, claim, or lien, present or prospective, in or upon the property so deeded and mortgaged, were fully advised by the executors and trustees of all the facts and circumstances connected therewith, and were fully informed of the disposition made by Charles Sprague of the moneys received by him upon these mortgages, and of the disposition made by the executors and trustees of the money so received by them in consideration of their conveyance to Charles Sprague, and that each and all of the said heirs, devisees, legatees, and creditors, and all other parties interested therein, consented to and acquiesced in those transactions; that thereafter, in the year 1897, each of those mortgages so executed by Charles Sprague to the appellee became due and unpaid, and that thereafter, in satisfaction of those mortgages and the indebtedness thereby secured, and in consideration of the sum of $1 and other good and valuable considerations to them paid, Charles, Otis, Winthrop Wright, and Clark Woodard Sprague, and Otis Sprague and James R. Hayden as executors and trustees of the will of the deceased Sprague, executed to the appellee their deed of conveyance of parcel No. 1 and parcel No. 2 of the Sprague Block, which latter deed was duly recorded, and by which the appellee acquired and now holds a fee-simple title to each of said parcels of land, free and clear of all claims and liens, and under which it entered into the possession of those parcels of land on or about the 1st day of December, 1897, and has ever since remained in such possession; that the appellee was—

"An innocent purchaser for value of said two parcels of land described in said deeds and mortgages, for the amount and value of the sums by it loaned and advanced upon, and secured to be paid by, said two several mortgages, according to the terms of said two mortgages, for the reason that this defendant loaned and paid said sums of money upon said mortgages, and took

said mortgages as security therefor, in good faith, and relying upon the terms and provisions of said will of John W. Sprague, and believing and relying upon the representations made to it, and upon the recitals and record of said deeds to Charles Sprague, as herein alleged, and without any knowledge or notice of any charge or lien claimed by said Lucy L. Wickham upon the said property, and this defendant thereafter acquired title to said property by deed in satisfaction of said mortgages, as herein alleged."

The prayer of the answers of the appellee is as follows:

"First. That it may be hence dismissed, with its costs.

"Second. In case the relief above prayed be not granted, then that it may be decreed to be the owner and entitled to the possession of the real estate and property described in clauses 1 and 2 of paragraph 3 of the amended bill herein, free and clear of any title, incumbrance, lien, or claim thereto of the plaintiff or of the defendants herein, and that the title of this defendant thereto be quieted, and for its costs.

"Third. In case the relief above prayed be not granted, then that this defendant may be decreed to be the owner of the two several notes and mortgages herein referred to, and that said mortgages are valid liens upon the real estate and property described in clauses 1 and 2 of paragraph 3 of the amended bill herein, prior and superior to any title, interest, lien, or claim of the plaintiff or any defendant in this cause, and that this defendant may enforce and foreclose said notes and mortgages, and sell said property to satisfy the same, and for its costs.

"Fourth. In case the relief above prayed be not granted, then that this defendant may have an accounting of all moneys loaned and paid by it upon said two notes and mortgages, and of the indebtedness now existing to it for principal and interest upon said notes and mortgages, and for taxes and other disbursements in the maintenance of said property, and that said indebtedness be decreed to be the first lien and charge upon the real estate and property last above referred to, and that said property may be sold to satisfy the same, and for its costs.

"Fifth. And this defendant further prays for such other and further relief in the premises as to the court may appear just and equitable."

The court below denied Mrs. Wickham any relief, and dismissed her cross-bill. It denied the principal relief asked by the complainant; holding that although the deeds to Charles Sprague were colorable only, and made for the purpose of satisfying the lender, the executors and trustees did have power under the will to mortgage the trust property, and that the mortgages to the appellee were in reality mortgages by the executors and trustees, and created valid liens upon the trust property described therein, and that the quitclaim deed to the appellee in satisfaction of those mortgages and the deeds secured thereby extinguished the title of the estate of Gen. Sprague. The court further held that the complainant was entitled to be subrogated to the rights of Otis and Charles Sprague, her judgment debtors, under the stipulation made at the time of the execution of the quitclaim deed, whereby they reserved to themselves, their heirs or assigns, or either of them, the right to repurchase the premises at any time within three years from December 1, 1897, and to have the net rentals received by the company applied upon the purchase price. But the court required the complainant to deposit the sum of $10,000 in the registry of the court within 30 days, as a condition precedent to an accounting by the appellee, and before the complainant would be permitted to know what sum would be required to complete the purchase under the terms of the stipulation. The $10,000 not having been deposited

within the 30 days allowed the original complainant, nor within the further time allowed her assignee, the present appellant, the bill also was dismissed, with costs to the defendants thereto, from which decree the present appeals were taken.

The court below held that the deeds from the executors to Charles Sprague were merely colorable transfers of title for the purpose of making mortgages in the form demanded by the lender, and that those deeds and the mortgages executed by Charles Sprague to the appellee constituted but one transaction, and was neither fraudulent nor illegal; that they were, in legal effect, mortgages by the executors; that the stipulation entered into in the foreclosure suits in the state court of Washington was a lawful contract, based upon a lawful and sufficient consideration, and without any taint of fraud; and that the quitclaim deed executed to the appellee in pursuance of that stipulation passed a valid title to the property covered by it. The court below further held that the executors under the will possessed the power to borrow money, and to mortgage the property of the estate to secure the repayment of the same. Except in one respect, I am unable to agree with those conclusions of the court below.

There can be no sort of doubt of the correctness of the conclusion of the trial court that the pretended deeds from the executors to Charles Sprague were merely colorable. The record shows beyond question that those deeds and the mortgages executed by Charles Sprague to the appellee constituted a mere scheme devised by the respective parties to them for the purpose of accomplishing indirectly what they considered the provisions of the will prohibited. Charles Sprague never paid anything for the purported conveyances to him, and the evidence in the case makes it perfectly plain that it was never intended by any of the parties to the transactions that he should. He never entered into possession of any of the property, nor exercised any act of ownership over any part of it. But on the contrary, the executors remained in possession, and continued to collect the rents and issues thereof, of all of which the appellee, through its agents, had full knowledge. And the court below, in effect, so found. It in effect, therefore, found, and correctly, against the defense set up by the appellee, that it was a bona fide purchaser of the property in question, without notice. The record shows with perfect clearness that the appellee, through its agents, was a party to the entire scheme, and therefore took whatever it got with full notice of all of the transactions. Did the law authorize or sanction any such disposition of the property of the decedent's estate? I am clearly of the opinion that it did not. A statute of Washington, as has been seen, authorizes any person to provide in and by his will the manner in which his estate shall be settled, and declares that, after the probate of such a will, "all such estates may be managed and settled without the intervention of the [probate] court, if the said last will and testament so provides." In the case in hand the testator did so provide. He was possessed of a small amount of personal property, and a very considerable amount of real estate, consisting mainly, if not entirely, of the Sprague Block, upon which

there was an existing mortgage of $40,000 in favor of the German Savings & Loan Society of San Francisco; lot 6, block 904, in the city of Tacoma, upon which there was a mortgage of $15,000 in favor of the New York Life Insurance Company; and the lots of land upon which the decedent resided. It was stipulated at the trial that the $15,000 mortgage held by the New York Life Insurance Company was foreclosed by the mortgagee on November 20, 1897, for the amount of the judgment, with interest and costs, amounting to $18,203.11, leaving no deficiency, and that no redemption was made. That lot is therefore eliminated from the case.

Gen. Sprague, having entered into an antenuptial contract with Abby W. Vance, whom he afterwards married, by which, upon his death, she should receive out of his estate the sum of $15,000, to be paid to her by the executors of his will within one year after his decease, and, in addition thereto, $200 a month until the $15,000 should be paid, ratified and confirmed that agreement in and by his will, and also devised and bequeathed to her, for and during such period of her natural life as she should continue to occupy the same as a home, the lots of land which constituted his residence, and certain articles of personal property; adding therein that:

"In the event my executors and trustees hereinafter named shall not deem it to the best interest of my estate to pay said sum of fifteen thousand dollars when it falls due, and my wife, Abby W. Sprague, shall consent to defer the payment thereof, then I do give and bequeath to my said wife, Abby W. Sprague, in lieu of interest on said sum of fifteen thousand dollars, the sum of two hundred dollars per month, payable monthly, from the date beginning one year after my decease and ending when my said executors and trustees shall pay my said wife the said sum of fifteen thousand dollars. And I do expressly charge the payment of the said sum of $15,000 upon the real estate [constituting their residence] described in this paragraph of my will and in which I have devised to my wife, Abby W. Sprague, an estate during such portion of her life as she shall occupy the same as a home, and I do expressly release and discharge all the remainder of my real estate from the lien of said sum of fifteen thousand dollars."

The will contained but two legacies—that of $1,000 to Lucy M. Skinner, a sister of the deceased, and the $30,000 (subsequently reduced by codicil to $15,000) devised to his daughter, Lucy L. Wickham, the payment of which latter legacy the testator expressly charged upon that part of the Sprague Block marked "A" upon the diagram, and expressly released and discharged all the remainder of his real estate from the lien of that legacy. All the rest, residue, and remainder of his estate, real, personal, and mixed, the testator bequeathed to his four sons, Otis, Winthrop Wright, Clark Woodard, and Charles Sprague, as tenants in common, and in equal parts.

The testator expressly conferred upon the executors and trustees appointed by him full power and authority to sell any or all of his real estate or personal property, except such of the latter as was specifically bequeathed by him, and excepting the parcel of real estate which he expressly charged with the payment of the legacy to his daughter, Mrs. Wickham, and the parcel expressly charged by him with the payment of the money due his wife under the marriage agreement, with or without notice, and upon such terms as

they should deem best, and free and discharged of any and all liens, expressed or implied, created by his will, and expressly declaring—

"That the receipt for the purchase money of my executors and trustees, or the survivor of them, shall be a sufficient discharge of the purchase money, and that it shall not be necessary to obtain a confirmation by any officer or court of any sale or sales made as aforesaid by my executors and trustees or the survivor of them in order to vest in their or his grantees the fee simple of said real estate."

And also expressly directing that his estate should be settled in the manner therein provided, and that none of his executors or trustees should be required to take out letters testamentary, except to admit the will to probate in the manner required by existing laws, after which the estate should be settled without the intervention of the superior or any court or officer in any manner whatsoever.

The conclusion of the court below to the effect that the mortgages executed by Charles Sprague to the appellee were in fact, and should be held to be, the mortgages of the executors, cannot, in my opinion, be supported, in view of the facts or upon principle.

In the first place, the appellee, in its answers, in more than one place expressly alleged that it at all times refused to loan any money to the executors, or to take as security therefor a mortgage upon any part of the property of the estate. There is nothing to the contrary in the appellee's answers. And those averments are fortified by the further allegations thereof to the effect that the deeds from the executors to Charles Sprague were absolute conveyances, made in consideration of the payment by him to them of the expressed consideration thereof; that he thereby became the owner in fee of the property covered by the deeds, after which the appellee in good faith made the $55,000 and $30,000 loans, respectively, to Charles Sprague, taking from him as security for the repayment thereof his notes, secured by his mortgages upon the property. A party is and should be held bound by such statement of facts made in its pleadings. And on principle it is and should be so. Courts of equity cannot, any more than courts of law, make contracts for parties. In the case of Hunt v. Rousmaniere, 1 Pet. 1, 16, 7 L. Ed. 27, the Supreme Court held that where parties, "upon deliberation and advice, reject one species of security, and agree to select another, under a misapprehension of the law as to the nature of the security so selected, a court of equity will not, on the ground of such misapprehension and the insufficiency of such security, in consequence of a subsequent event, not foreseen, perhaps, or thought of, direct a new security of a different character to be given, or decree that to be done which the parties supposed would have been effected by the instrument which was finally agreed upon."

In Ferry v. Laible, 31 N. J. Eq. 566, which, in respect to the point now under consideration, was quite similar to the present case, the chancellor said:

"It was plausibly argued by the counsel for the complainant that the power to sell conferred by the will embraced also a power to mortgage, and that, if he was right in this contention, the mortgage should be upheld as within the power, for, although not executed by the executors themselves,

yet, having been executed by their grantee, to whom they conveyed the mortgaged premises for the purpose of having them mortgaged to the complainants, it should, in a court which deals mainly with the substance of transactions, regardless of mere questions of form, be treated as the deed of the executors. My judgment rejects both propositions as thoroughly unsound. The last is much too devious, and too strongly marked by false suggestions, if not actual falsehood, ever to be recognized as a fit foundation for a judicial conclusion."

See, also, Moore v. American L. & T. Co., 115 N. Y. 65, 21 N. E. 681.

But I am also of the opinion that under the terms of the will the executors had no power to borrow money, and to secure the same by mortgage upon property of the estate. A mortgage upon real property in the state of Washington does not convey to the mortgagee any title thereto, either before or after condition broken, but is only a lien, which is extinguished by the payment of the money for which it is given as security. Dane v. Daniel, 23 Wash. 379, 63 Pac. 268.

In Allen v. St. L. National Bank, 120 U. S. 32, 7 Sup. Ct. 462, 30 L. Ed. 573, the Supreme Court said:

"The essential difference between a power to sell and a power to pledge is well brought out in a recent case in the House of Lords, by Lord Chancellor Selborne, who said: 'It is manifest that, when a man is dealing with other people's goods, the difference between an authority to sell and an authority to mortgage or pledge is one which may go to the root of all the motives and purposes of the transaction. The object of a person who has goods to sell is to turn them into money, but, when those goods are deposited by way of security for money borrowed, it is a transaction of a totally different character. If the owner of the goods does not get the money, his object and purpose are simply defeated; and if, on the other hand, he does get the money, a different object and different purpose are substituted for the first, namely, that of borrowing money and contracting the relation of debtor with a creditor, while retaining a redeemable title to the goods, instead of exchanging the title to the goods for a title, unaccompanied by any indebtedness, to their full and equivalent in money.'"

In Ventress v. Smith, 10 Pet. 161, 9 L. Ed. 382, the same court said:

"Authority given to executors and administrators to sell is a personal trust, and must be strictly pursued. And if they transcend their authority in any essential particular, their act is void."

In the case of Bloomer v. Waldron, 3 Hill, 361, Judge Cowen, in holding that a power of sale conferred upon an executor did not authorize him to make a mortgage, said:

"When a man contracts a sale of his land, whether his object be to raise money or not, he means to put it in the market for what it will fetch at the time, and avoid the fluctuations of prices. An absolute title and delivery of possession will fetch more than a mere pledge. At any rate, there is a substantial difference between raising money upon mortgage and sale, and it is enough to say that a power to raise it by one of these methods puts a negative upon the other."

Not only is there nothing in the will here in question to indicate any intention on the part of the testator that his executors might mortgage and remortgage his property, but the whole frame of it indicates that he used the words "to sell" in their natural and or-

dinary signification. He excluded from the power of sale the personal property specifically bequeathed, the parcel of land upon which he fixed a lien as security for the payment of his legacy to his daughter, and the lots constituting the residence, upon which he fixed a lien to secure the payment of the money due his widow under the provisions of the antenuptial contract as well as the will. Knowing that this money as well as his legacies and debts must be paid, he conferred upon his executors and trustees full power and authority to sell all of his other property; expressly declaring that their receipt for the "purchase money" should be a sufficient discharge of the "purchase money," and expressly declaring that "it shall not be necessary to obtain a confirmation by any officer or court of any sale or sales made as aforesaid by my executors and trustees, or the survivor of them, in order to vest in their or his grantee the fee simple of said real estate." I am of the opinion that under such a will the power to borrow money and secure its repayment by mortgage upon the property of the estate does not exist in the executors and trustees. If they may exercise that power once, they may do so over and over again, and thus prolong the trust indefinitely. No such intention on the part of the testator can be discerned from the provisions of the will in question. See, also, Parkhurst v. Trumbull, 130 Mich. 408, 90 N. W. 25; Taylor v. Galloway, 1 Ohio, 232, 13 Am. Dec. 605; Hoyt v. Jaques, 129 Mass. 286; Allen v. Ruddell, 51 S. C. 366, 29 S. E. 198; Rutherford L. & I. Co. v. Sanntrock, 60 N. J. Eq. 471, 46 Atl. 648.

Nor am I able, in view of the facts disclosed by the record, to see how the appellee can be subrogated to the rights of the German Savings & Loan Society under its mortgage, notwithstanding the fact that that mortgage was paid with money loaned by the appellee to Charles Sprague. This court, as well as the Supreme Court of the state of Washington, has recently held fraudulent and void a similar manipulation of the real property of minor children by the guardian and others interested in evading and circumventing the provisions of a state statute authorizing a guardian to sell the real property of his ward, under orders of the probate court, but making no provision for mortgaging it. Lombard v. La Dow, 126 Fed. 119, 60 C. C. A. 667; Dormitzer v. German Savings & Loan Society, 23 Wash. 132, 62 Pac. 862; German Savings & Loan Society v. Tull et al. (decided here March 6, 1905) 136 Fed. 1. The same principle, in my opinion, applies to fictitious dealings with the estate of a decedent, and it has been so held. Moore v. The American L. & T. Co., 115 N. Y. 65, 21 N. E. 681.

Subrogation, as was said in German Savings & Loan Society v. Tull et al., supra, is founded on the facts and circumstances of each particular case, and on the principles of natural justice. In general, it will be applied—

"Whenever any person, other than a mere volunteer, pays a debt or demand which in equity or good conscience should have been satisfied by another, or where a liability of one person is discharged out of a fund belonging to another, or where one person is compelled, for his own protection, or that of some interest which he represents, to pay a debt for which another is prima-

rily liable, or wherever the denial of the right would be contrary to equity and good conscience. Subrogation being the creature of equity, it will not be permitted where it would work injustice to the rights of those having equal or superior equities. Thus, it will not be enforced against a bona fide purchaser for value without notice, or in favor of a person guilty of fraud, or for the benefit of one who would thereby be enabled to derive an advantage from, or to establish his claim through, his own wrong or negligence or inequitable or illegal conduct. Nor will it be enforced at the expense of a legal right, or where resort to a usurious agreement or security would be necessary for its establishment." 27 Am. & Eng. Encyc. of Law (2d Ed.) 203, 204, and authorities there cited.

With full knowledge of the provisions of the will and of the powers of the executors, the appellee, through its agents, became a party to the wrongful manipulation of the property of the estate already detailed; and after the superior court of the state of Washington had overruled its demurrers to the answers of Mrs. Wickham to the complaints there filed for the foreclosure of the appellee's mortgages, in which she set up in defense the facts here relied upon by her and the cross-complainant, the appellee entered into the stipulation, to which neither Mrs. Wickham nor Mrs. Cox was a party, under which it received the quitclaim deed purporting to convey to it the property involved in those suits, and dismissed them. I am of the opinion that those proceedings, from their commencement to their end, whether so intended or not, were wrongful, and constituted a legal fraud upon all persons legally entitled to look to the property of the estate for the payment of money due them, for which reason, as well as because there is no foundation for it in the appellee's pleadings, I am of the opinion that the appellee is not entitled to be subrogated to anybody's rights. Authorities supra, and German Bank v. United States, 148 U. S. 573, 13 Sup. Ct. 702, 37 L. Ed. 564; Huse v. Den (Cal.) 24 Pac. 790, 20 Am. St. Rep. 232.

The appellee occupies the position of a mere volunteer who has parted with its money on worthless security, and is not relievable by a court of equity out of another's property. Railroad Company v. Soutter, 13 Wall. 517, 20 L. Ed. 543; Patterson v. Brown, 32 N. Y. 81. The case shows that the money due the widow was paid by the executors out of the $55,000 loaned by the appellee, and that the parcel of land charged by the testator with the lien to secure the payment of the legacy to Mrs. Wickham was sold by the executors and trustees and the residuary legatees, subject to certain taxes and assessments against it, for $8,866; such sale being made with Mrs. Wickham's consent; she receiving the purchase money, and releasing the property from the lien in her favor. The balance of her legacy has not been paid. If it continued, as I think it undoubtedly did, an obligation of the estate, I think there can be no doubt that she is entitled to have the trust property restored to the estate; to have an accounting by the executors, and the balance of her legacy paid, if there be sufficient money remaining in the estate to do so. Mollan v. Griffith, 3 Paige, 403; Boyer v. Robinson, 26 Wash. 121, 66 Pac. 119.

So, too, is the judgment creditor of the residuary legatees, Otis and Charles Sprague, entitled to like relief. Mrs. Cox's judgment

against them was rendered prior to their attempted conveyance of their interest in the property to the appellee by the quitclaim deed executed in pursuance of the stipulation, from which both Mrs. Cox and Mrs. Wickham were omitted, although parties to the suits in which the stipulation was entered. That deed, being the final link in the tortious and illegal proceedings, was, like the rest of them, void and of no effect as against the complainant and cross-complainant, and left the residuary interests of the judgment debtors still in them. Those interests the judgment creditor is equitably entitled to have applied to the satisfaction of the judgment, and, as the necessary means to the attainment of that end, is likewise entitled to have the trust property restored to the estate, to have an accounting by the executors, and the residuary interests of the judgment debtors applied, so far as they may go, to the satisfaction of the balance due upon that judgment.

The judgment appealed from should, in my opinion, be reversed, and the cause remanded to the court below for further proceedings not inconsistent with this opinion.